*681
 
 OPINION OF THE COURT
 

 Simons, J.
 

 Petitioners are four medical organizations whose membership consists of New York State physicians. Respondents are the Commissioner of Health and the New York State Public Health Council. In February of 1988, petitioners sent a letter to the Commissioner of Health requesting that infection with the human immunodeficiency virus (HIV infection) be added to the lists of communicable and sexually transmissible diseases pursuant to Public Health Law § 225 (5) (h) and § 2311.
 
 [1]
 
 The Commissioner denied the request on the ground that designation would be contrary to the health of the public because it would discourage cooperation of affected individuals and would lead to the loss of confidentiality for those infected with the disease. Petitioners then commenced this CPLR article 78 proceeding contending that the statutes imposed a duty on respondents to add HIV infection to the lists or, alternatively, if designation was a matter of discretion, that respondents’ refusal to list HIV infection was arbitrary and capricious.
 

 Supreme Court dismissed the petition, holding that designation was discretionary with respondents and that their decision was reasonable. A divided Appellate Division affirmed. The court agreed that designation of a disease as communicable or sexually transmissible is within respondents’ discretion but two Justices concluded in dissent that respondents’ determination was arbitrary and capricious. We now affirm.
 

 I
 

 The Commissioner of Health is appointed by the Governor with the consent of the Senate and is charged with the responsibility of taking "cognizance of the interests of health and life of the people of the state, and of all matters pertaining thereto” (Public Health Law § 204 [1]; § 206 [1] [a]). The statute provides that the appointee shall be a practicing physician skilled and experienced in public health duties (Public Health Law § 203). The Public Health Council consists of the Commissioner and 14 members appointed by the Gover
 
 *682
 
 nor with the consent of the Senate. It has the duty, at the request of the Commissioner, to consider any matter relating to the preservation and improvement of public health and it may also advise the Commissioner and recommend action concerning matters of public health (Public Health Law § 225 [1]). The Council establishes health and health-related regulations, known as the Sanitary Code of the State of New York, subject to approval by the Commissioner (Public Health Law §225 [4]).
 

 The list of communicable diseases is promulgated by the Council with the approval of the Commissioner pursuant to Public Health Law § 225 (4) and (5) (h). The list of sexually transmissible diseases is promulgated by the Commissioner pursuant to Public Health Law § 2311. Both are set forth in the Sanitary Code
 
 (see,
 
 10 NYCRR 2.1, 23.1). Once a disease is designated as a communicable or sexually transmissible disease, statutory provisions requiring isolation and quarantine, reporting, testing and contact tracing apply to persons infected with it.
 

 HIV infection is a communicable disease. It is transmitted by sexual contact, intravenous drug use or transfusions of infected blood. It can also spread from an infected mother to her infant during pregnancy or at the time of birth. Studies show no evidence that the infection is transmitted by casual contact. Individuals with HIV infection may or may not develop signs of infection and the disease can lead to AIDS. AIDS is a disease which damages the individual’s immune system: those who develop it are vulnerable to unusual infections and cancers that do not generally pose a threat to anyone whose immune system is intact. At the present time there is no known cure for AIDS and the percentage of HIV infected individuals who will develop it is not known.
 

 II
 

 Petitioners contend first that the provisions of section 225 (5) (h) and section 2311 require respondents to list HIV infection as a communicable and sexually transmissible disease. We do not construe those sections as imposing a flat, unvarying duty on respondents to designate as such every communicable or sexually transmissible disease in the Sanitary Code.
 

 Section 225 (5) (h) of the Public Health Law provides that "[t]he sanitary code may * * * designate the communi
 
 *683
 
 cable diseases which are dangerous to the public health.” Petitioners noting that HIV infection is both "communicable” and "dangerous to the public health”, contend that the statute requires respondents to list it. The Legislature’s use of the permissive word "may”, however, supports the conclusion that designation is left to the discretion of respondents. Indeed, we find no language in Public Health Law § 225 (5) (h) that arguably could be construed as mandating that they list all communicable diseases.
 

 Our construction of the statute is confirmed by the language found in section 225 (4) and (5) (a) of the Public Health Law. Section 225 (4) authorizes the Council, with the approval of the Commissioner, to "establish, and from time to time, amend and repeal sanitary regulations, to be known as the sanitary code of the state of New York.” Subdivision (5) of the same section provides that the Sanitary Code "may”, "deal with any matters affecting the security of life or health or the preservation and improvement of public health in the state of New York” (Public Health Law § 225 [5] [a]). We addressed the scope of respondents’ powers under section 225 in
 
 Chiropractic Assn. v Hilleboe
 
 (12 NY2d 109, 120) and stated that "the Sanitary Code in general presents a situation where flexibility and the adaptation of the legislative policy to infinitely variable conditions constitute the essence of the program”. That observation is pertinent to respondents’ powers to amend and adapt the Sanitary Code in order to deal with changing public health concerns regarding HIV infections.
 

 The Commissioner of Health is vested with similar discretion under section 2311 of the Public Health Law. That section provides that the Commissioner shall promulgate a list of sexually transmissible diseases, "such as gonorrhea and syphilis.” In determining the diseases to be included in such list, the Commissioner "shall consider those conditions principally transmitted by sexual contact and the impact of particular diseases on individual morbidity and the health of newborns” (Public Health Law § 2311).
 

 Petitioners assert that because HIV infection is principally transmitted by sexual contact
 
 [2]
 
 and has an impact on individual morbidity and the health of the newborns, respondents must include it on the list of sexually transmissible diseases. However, the statute does not require that every
 
 *684
 
 sexually transmitted disease be listed. It identifies the type of diseases to be covered, "such as gonorrhea and syphilis”, and directs the Commissioner to "consider” conditions transmitted by sexual contact. Under the terms of the statute, the Commissioner has the discretion to "determin[e] the diseases to be included in such list.” The discretionary nature of the power conferred is confirmed by the legislative history of the statute. As originally proposed, section 2311 could have been read as requiring that all sexually transmitted diseases be listed. Governor Carey vetoed it for that reason
 
 (see,
 
 Bill Jacket, L 1980, ch 878). The bill was subsequently amended to vest discretion in the Commissioner by limiting its provisions to only those diseases
 
 "principally
 
 transmitted by sexual contact” (emphasis added;
 
 see,
 
 Bill Jacket, L 1980, ch 878, Governor’s Mem in approval, dated Nov. 26, 1980, 1981 McKinney’s Session Laws of NY, at 2559, 2560 [list would "include such other sexually transmissible diseases as may be determined by the Commissioner of Health”]).
 

 There are valid reasons for giving the Commissioner discretion in these matters. Placement of any disease on the communicable or sexually transmitted disease lists triggers statutory provisions relating to isolation and quarantine, reporting, mandatory testing and contact tracing
 
 (see,
 
 Public Health Law arts 21, 23; 10 NYCRR parts 2, 23) — provisions which, for public health reasons, may not be appropriate in dealing with every type of communicable or sexually transmissible disease. The Commissioner has determined, for example, that no public health purpose is served by placing influenza, a communicable disease, and chlamydia, a sexually transmissible disease, on the lists. Whether HIV infection should be listed or not involves a similar determination by respondents after considering the circumstances attendant to the disease.
 

 ra
 

 Petitioners urge alternatively that if respondents have discretion in these matters, their determination in this case is arbitrary and capricious because they failed to consider the pervasive and serious effect of the disease on the public as a whole and petitioners in particular. They argue that the reporting, mandatory testing and contact tracing requirements contained in the communicable and sexually transmissible disease statutes are crucial in controlling the spread of HIV infection and necessary to allow them to determine
 
 *685
 
 whether patients are infected with the disease so that they can take appropriate precautions during treatment.
 

 Our review is limited to whether respondents’ determination is rationally based, i.e., whether it is unreasonable, arbitrary or capricious
 
 (see, Matter of Society of N Y. Hosp. v Axelrod,
 
 70 NY2d 467, 473;
 
 Matter of Sigety v Ingraham,
 
 29 NY2d 110, 114;
 
 Grossman v Baumgartner,
 
 17 NY2d 345, 349). We cannot substitute our judgment for that of qualified experts in the field of public health unless their judgment is "without justification.”
 
 (See, Grossman v Baumgartner, supra,
 
 at 350;
 
 Chiropractic Assn. v Hilleboe,
 
 12 NY2d 109,
 
 supra.)
 
 We conclude that in this case the evidence in the record provides a rational basis for respondents’ determination.
 

 Respondents have declined to add HIV infection to the lists because the provisions triggered by that designation — isolation and quarantine, reporting, mandatory testing and contact tracing — are, in their opinion, ineffective and impractical in dealing with it. Petitioners acknowledge that isolation and quarantine would not be appropriate for HIV infection because there is no evidence that it is spread by casual contact. Their argument is directed to the provisions of the statute requiring reporting, testing and contact tracing.
 

 Under existing requirements, New York State and New York City health officials already have access to reported cases of HIV infection, including most confirmatory test results
 
 (compare,
 
 Public Health Law §§ 2102, 2103; 10 NYCRR 2.10, 2.11, 2.12, 23.3, 23.4,
 
 with
 
 10 NYCRR 24-1.1, 58-1.1 [f] [2]). Thus, the inquiry narrows to whether respondents’ determination to forego contact tracing and mandatory testing of those infected with HIV is rational. In support of their decision, respondents note that, as a practical matter, mandatory testing and contact tracing will not lead to control and prevention because many persons infected with HIV are not tested until their symptoms become apparent and symptoms may not develop for many years. In the interim, between infection and the appearance of symptoms, an individual may have multiple needle sharing, sexual contacts or both. These factors would make contact tracing, without the voluntary cooperation of the infected individuals, an almost impossible task. Moreover, HIV antibodies may take months to develop and infected individuals who have not yet developed antibodies may be capable of carrying and transmitting the disease. Thus, while contact tracing has historically been a useful
 
 *686
 
 public health tool in stemming epidemics of readily discoverable communicable diseases which have a short incubation period, that is not the nature of HIV infections.
 

 In addition to these practical limitations, respondents argue that mandatory testing and contact tracing would prevent individuals with HIV infection from cooperating with public health officials. This is so because of the fatal and incurable nature of HIV infection and the segment of the population which has in the past been most affected by that disease. Respondents note that most people affected have strong reasons to avoid disclosing that they have AIDS or HIV infection and confidentiality is critical to them. Intravenous drug users, who make up an ever increasing percentage of new AIDS cases, are engaged in behavior which is illegal and there is little reason to believe they will cooperate with health authorities in identifying their needle sharing contacts. Similar disincentives exist for homosexuals and others at risk of HIV infection because disclosure can result in discrimination in housing, employment and health care. Respondents contend that counseling and active voluntary cooperation are essential to alter private sexual and drug abuse practices which spread HIV infection and they maintain that infected individuals will come ° forward for counseling and testing only if they are assured that testing will not be coerced and that their test results will remain confidential.
 

 Respondents’ approach is in accord with the State policy underlying article 27-F of the Public Health Law, a statute enacted to promote voluntary testing for HIV infection. As the Governor emphasized in approving the act, "[b]y enacting this bill, New York rejects coercive measures. As experience in other states has shown, mandatory testing of broad population groups is neither effective nor desirable”
 
 (see,
 
 Bill Jacket, L 1988, ch 584, Governor’s Mem in approval, dated Sept. 1, 1988, 1988 McKinney’s Session Laws of NY, at 2284).
 

 The relief petitioners seek is inconsistent with that legislation. In article 27-F, the Legislature has mandated that written informed consent must be obtained from an individual prior to the performance of any HIV-related test
 
 (see,
 
 Public Health Law § 2781 [1]). By contrast, informed consent is not required to test for communicable or sexually transmissible diseases generally
 
 (see,
 
 Public Health Law §§ 2100, 2304; 10 NYCRR 2.5, 2.6, 23.2). Moreover, article 27-F sets strict limits
 
 *687
 
 on contact tracing. For example, it permits physicians to warn an identified contact if they believe the contact is in danger, but precludes the physician from revealing the subject’s identity
 
 (see,
 
 Public Health Law § 2782 [4]). Any individual who does not want a physician to notify contacts can obtain anonymous testing pursuant to section 2781 of the Public Health Law. No such limitations exist on contact tracing once a disease is listed as communicable
 
 (see,
 
 10 NYCRR 2.6). Finally, article 27-F provides a mechanism for assuring anonymity and confidentiality of test results
 
 (see,
 
 Public Health Law § 2781 [4]). No comparable protections are provided to an individual once the disease has been listed as communicable or sexually transmissible.
 

 Finally, respondents’ approach to the problem is supported by leading health authorities. The United States Centers for Disease Control has adopted guidelines for dealing with HIV infection which include voluntary testing, counseling and confidentiality of personal information
 
 (see,
 
 Public Health Service Guidelines for Counseling and Antibody Testing to Prevent HIV Infection and AIDS, Centers for Disease Control Morbidity and Mortality Weekly Report, vol 36, No. 31, at 509 [Aug. 14, 1987]). Similarly, the Institute of Medicine, National Academy of Sciences, has concluded that mandatory testing and contact tracing are inappropriate, at this stage, to deal with the spread of HIV infection
 
 (see,
 
 Confronting AIDS— Directions for Public Health, Health Care, and Research, Institute of Medicine, National Academy of Sciences, at 218-249 [1986];
 
 see also,
 
 Eisenstat,
 
 An Analysis of the Rationality of Mandatory Testing for the HIV Antibody: Balancing the Governmental Public Health Interests with the Individuals Privacy Interest,
 
 52 U Pitt L Rev 327). We conclude, therefore, that respondents’ determination that designating HIV infection as a communicable or sexually transmissible disease would be detrimental to the public health is rational.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Petitioners originally requested that respondents designate AIDS as a communicable and a sexually transmitted disease. They subsequently expanded the request to include any status of HIV seropositivity
 
 (see,
 
 Public Health Law § 2780 [definitions]).
 

 [2]
 

 . Respondents maintain that HIV infection is principally transmitted by intravenous drug use now rather than sexual contact.