OPINION OF THE COURT
Harold Baer, Jr., J.
In this employment discrimination case, defendants move, pursuant to CPLR 3211 (a) (7), to dismiss the complaint for failure to state a cause of action.
I
BACKGROUND
The complaint contains four causes of action. The following facts are alleged. Plaintiff is gay but it is not alleged that he had contracted acquired immune deficiency syndrome (AIDS) or has tested positive for the human immuno-deficiency virus (HIV). He was employed as a senior loan officer by defendant Bank of New York Mortgage Company (Mortgage Company). The complaint also names as a defendant ARCS Mortgage, Inc. (ARCS), which does business in New York as Mortgage Company. Defendant Bank of New York Company, Inc. (the Bank) owns all the shares of ARCS. The individual defendants are employees of Mortgage Company.
Defendant ARCS allegedly discourages employment of indi *428 viduals such as plaintiff because of concern about medical costs caused by AIDS. Defendant Feinstein, plaintiff’s supervisor, harassed the plaintiff in an effort to force his resignation, excluded plaintiff from important weekly meetings and finally, in June 1990, told him he would be discharged and blacklisted.
On November 2, 1990, McEnerney, a top-level manager of Mortgage Company, formally fired plaintiff, allegedly for insubordination. Despite demands, plaintiff did not receive notification and forms to effect continuation of his health benefits (which presumably would have been funded by his employer) until it was too late. Plaintiff has had to obtain insurance on his own. Plaintiff claims that he was terminated because of discrimination and due to his perceived handicap of having AIDS or being in a high-risk group for contracting AIDS, in violation of the Human Rights Law (Executive Law § 296 [1] [a]). (First cause of action.)
Plaintiff alleges that he had a sexual relationship with defendant Vaughn and that Vaughn failed to tell him until afterwards that Vaughn had been HIV-positive for three years, which Mortgage Company is alleged to have known. Mortgage Company undertook its campaign to terminate plaintiff before he developed AIDS in order to save money. Plaintiff claims that this amounts to intentional infliction of emotional distress. (Second cause of action.)
Defendant Feinstein allegedly defamed plaintiff in a letter to the personnel office of Mortgage Company. Finally, Mortgage Company and the Bank are alleged to be vicariously responsible for the acts of the individual defendants. (Third and fourth causes of action.)
II
THE ISSUES
Plaintiff was an at-will employee. As a result, absent some statutory protection, he is barred from suing, directly or indirectly, for wrongful discharge, as he himself recognizes. (Murphy v American Home Prods. Corp., 58 NY2d 293 [1983].) The centerpiece of plaintiff’s case thus is his claim under the Human Rights Law. However unjust it may be, section 296 (1) (a) does not prohibit discrimination against homosexuals. (See, Under 21 v City of New York, 65 NY2d 344, 357 [1985]; 420 E. 80th Co. v Chin, 115 Misc 2d 195 [App Term, 1st Dept 1982], *429 affd 97 AD2d 390 [1st Dept 1983].) Plaintiff recognizes that the words "sexual orientation” are missing from the list of proscribed motives for the mistreatment of employees. Legislation has been proposed to fill this gap but has failed of passage. (Proposed S 1504 and A 2342, Jan. 26, 1989 [Ohrenstein and Passannante, sponsors].) Clearly, it lies beyond the power of this court to "interpret” a statute so as to include within it a provision the Legislature examined and rejected.
The complaint in part is based upon alleged discrimination against plaintiff because he is gay. Plaintiff does not try to salvage this portion of the complaint as a ground for the Human Rights Law claim. Plaintiff seeks instead to convince this court that protection is accorded him by the disability portion of section 296 (1) (a). Although there is no statute specifically prohibiting discrimination in employment against those who have AIDS, the disability portion of section 296 (1) (a) does, as plaintiff contends, embrace this plague. (Cf., Rehabilitation Act of 1973, 29 USC § 701 et seq.; see, 3A Larson and Larson, Employment Discrimination § 108.00 et seq. [1991].) It is not a valid argument — and defendants here do not urge it— to say that AIDS should not be covered because it appears only amongst gay men and the Legislature has decided against banning discrimination because of sexual orientation. Clearly, AIDS is a disability, a medical impairment, and a ghastly one. (See, Human Rights Law § 292 [21].) Anyone stricken by the disease is entitled to the protection of the disability portion of section 296 (1) (a). (See, Bell Rests. Ltd. Partnership v City of New York Commn. on Human Rights, NYLJ, Nov. 19, 1990, at 25, col 1 [Sup Ct, Greenfield, J.]; Matter of Barton v New York City Commn. on Human Rights, 140 Misc 2d 554, 560 [Sup Ct 1988], mod 151 AD2d 258 [1st Dept 1989]; Poff v Caro, 228 NJ Super 370, 549 A2d 900 [1987].)
Section 296 (1) (a) applies not only to actual disabilities, but to perceived ones as well, whether the perceptions are justified or not. Employers and others are prohibited from engaging in discriminatory conduct against those who are merely thought to have AIDS. This principle, which follows the approach of the Vocational Rehabilitation Act, is the result of the sensible and humane notion that we are no more justified in victimizing individuals on the grounds of suspicions of disability than because we have knowledge of the real thing. (See, School Bd. v Arline, 480 US 273 [1987]; Bell Rests. Ltd. Partnership v City of New York Commn. on Human Rights, supra; see also, *430 Romei v Shell Oil Co., index No. 11005/90, Sup Ct, NY County, Feb. 14, 1991 [alleged actions based upon sudden and severe weight loss, infections, an abnormal number of sick days and the consequent belief that plaintiff had AIDS].) Given the nature and history of AIDS, it is especially important that the law discourage cruelty and discrimination founded upon mistaken perceptions or irrational fears.
The harder question presented by this motion, and one concerning which precedent is sparse indeed, arises when we consider those who do not have AIDS but have tested positive for HIV. It can be argued that asymptomatic HIV infection should not be considered a disability. (See, School Bd. v Arline, supra, 480 US, at 282, n 7.) I disagree. Asymptomatic HIV infection is a diagnosable medical abnormality, even though symptoms are not apparent, and one that carries with it future difficulties of the utmost gravity. This condition is a "medical impairment resulting from * * * physiological * * * conditions which * * * is demonstrable by medically accepted * * * diagnostic techniques” and thus satisfies the statutory definition. (Human Rights Law § 292 [21]; see, State Div. of Human Rights v Xerox Corp., 65 NY2d 213, 219 [1985] [The statute covers "merely diagnosable medical anomalies which impair bodily integrity and thus may lead to more serious conditions in the future * * * [A]n employer cannot deny employment simply because the condition has been detected before it has actually begun to produce deleterious effects”].) It would be if not bizarre, certainly peculiar to suggest that the Legislature had chosen to tolerate firings and other punitive action directed against those who test positive because these persons had not yet suffered the full horror of this scourge. (See, Matter of District 27 Community School Bd. v Board of Educ., 130 Misc 2d 398 [Sup Ct 1986]; Note, Asymptomatic Infection with the AIDS Virus as a Handicap under the Rehabilitation Act of 1973, 88 Colum L Rev 563 [1988]; Note, AIDS and Employment Discrimination: Should AIDS Be Considered a Handicap?, 33 Wayne L Rev 1095 [1987].)[1]
*431 It follows then that the statute bans discrimination based upon the perception, correct or not, that someone is HIV-positive. (See, Leckelt v Board of Commrs., 714 F Supp 1377, 1385-1386 [ED La 1989], affd 909 F2d 820 [5th Cir 1990]; Local 1812, Am. Fedn. of Govt. Employees v United States Dept. of State, 662 F Supp 50, 54 [D DC 1987].)
The plaintiff does not have AIDS and thus this case does not involve that disease as an actual disability. Plaintiff’s pleading and his papers on this motion are neither as clear nor as precise as one might wish. Although imperfectly, plaintiff appears to be alleging that he was discriminated against because of the perception that he has AIDS. This is a valid basis for a claim, although it remains to be seen whether plaintiff indeed can prove this claim.
Defendants argue that plaintiff seeks to recover on the ground that he is disabled merely because he is gay, but defendants misstate the case. To be gay per se is not a medical disability (though in our society, sadly, it certainly remains a social one). Being gay alone is not a reasonable ground for a perception of disability since homosexuality does not carry with it a sentence of infection. To construe mere membership in a group at risk as equivalent to a perceived disability would be to import into the statute the ban on sexual orientation that has to date been conspicuously omitted. (But see, Poff v Caro, supra, 228 NJ Super, at 377, 549 A2d, at 903 [New Jersey statute protects those "discriminated against because they are perceived to * * * be potential victims of AIDS”].) Of course, if an employer irrationally believed that a gay employee was, because of his sexual preference alone, HIV-positive, the statute would protect the employee because it shields employees from the consequence of irrational perceptions.
Plaintiff here alleges more than knowledge or perception that he is gay. Plaintiff claims that Mortgage Company knew that the defendant Vaughn had tested positive for AIDS, that plaintiff is gay and that plaintiff and Vaughn had had sexual relations.[2] Construing the pleading generously and most favorably to the plaintiff, as I must (Gerardi v Nuclear Util. Servs., 149 Misc 2d 657 [Sup Ct 1991]), I conclude that plaintiff has *432 stated a cause of action insofar as plaintiff can be deemed to allege that he was fired because it was thought that he had been infected by HIV, though asymptomatically, as opposed to being perceived as actually suffering from AIDS itself (discussed above). Plaintiff will have to prove something more than knowledge of his homosexuality on defendant’s part. Proof of an illness or a perception of illness as the motivating force for the firing is required. Defendants of course may move for summary judgment if the proof is not to be found.[3]
The cause of action for intentional infliction of emotional distress as to all parties save Vaughn must be dismissed. The conduct alleged is certainly reprehensible and hard-hearted but that is not the test. The claim, which is founded on treatment intended to get rid of plaintiff, is merely a device to state in other terms a cause of action for wrongful discharge. The courts of this State have been extremely strict on this score. (See, Leibowitz v Bank Leumi Trust Co., 152 AD2d 169 [2d Dept 1989]; see also, Buffolino v Long Is. Sav. Bank, 126 AD2d 508 [2d Dept 1987]; Lapidus v New York City Ch. of N. Y. State Assn. for Retarded Children, 118 AD2d 122 [1st Dept 1986]; Belanoff v Grayson, 98 AD2d 353 [1st Dept 1984]; but see, Kaminski v United Parcel Serv., 120 AD2d 409 [1st Dept 1986].)
The nature of plaintiff’s claim of intentional infliction of emotional distress against Vaughn individually is not explained in plaintiff’s papers, where indeed he is almost treated as an incidental player in this unfortunate drama. Obviously Vaughn, himself allegedly HIV-positive, would presumably have little interest in discriminating against the plaintiff and he is not alleged to have done so. The only alleged wrong Vaughn appears to have committed is engaging in sexual relations with plaintiff without advising plaintiff of his infection.
In my view, a cause of action may be stated against an individual who transmits HIV to another individual. Battery is a possible foundation for a cause of action but a problematic one in view of the short Statute of Limitations and the intent *433 element. Negligence is a valid theory. AIDS is a horrendous illness. Sexual relationships are a uniquely intimate and special form of contact. A duty arises when a person engages in such a special relationship, a duty to use reasonable care not to transmit a sentence of death to his or her partner. This duty must exist outside and be separate from traditional husband/wife relationships if the law is accurately to reflect the present mores of the land and if the State is to maintain the role of protector against needless death. Although the State ought to intrude into the bedroom only in extraordinary circumstances, there clearly is a great and overriding public interest in limiting the spread of this dreadful illness. (See, Public Health Law § 2307.)[4] As for foreseeability, there is a serious risk that engaging in unshielded sexual activity will cause transmission of HIV. Misrepresentation theory seems also to provide a basis for a valid cause of action. What the defendant knew about his medical condition will be critical to the viability of any claim. (See generally, Schwartz, Liability for the Transmission of AIDS and Herpes, 1987 Annual Survey of American Law 523; Note, Liability in Tort for the Sexual Transmission of Disease: Genital Herpes and the Law, 70 Cornell L Rev 101 [1984]; Note, Standards of Conduct, Multiple Defendants, and Full Recovery of Damages in Tort Liability for the Transmission of Human Immunodeficiency Virus, 18 Hofstra L Rev 37 [1989].) In coming to this conclusion I am not writing on a perfectly blank slate. (Berner v Caldwell, 543 So 2d 686 [Sup Ct, Ala 1989]; Mussivand v David, 45 Ohio St 3d 314, 544 NE2d 265 [1989]; Doe v Roe, 218 Cal App 3d 1538, 267 Cal Rptr 564 [1990]; B.N. v K.K., 312 Md 135, 538 A2d 1175 [1988]; R.A.P. v B.J.P., 428 NW2d 103 [Minn App 1988]; Annotation, Tort Liability for Infliction of Veneral Disease, 40 ALR4th 1089.) In this State the foundation for my conclusion goes back at least as far as White v Nellis (31 NY 405 [1865]; see, Maharam v Maharam, 123 AD2d 165 [1st Dept 1986]).
The unique aspect here, in contrast with cases I have cited, is that the plaintiff does not claim to be afflicted with a disease, either with full-blown AIDS or seropositivity for HIV. A cause of action such as that asserted here would, in my view, be valid in instances in which the plaintiff has been infected with HIV and full-blown AIDS remains to develop. *434 (See, B.N. v K.K., supra, 538 A2d, at 1179-1182 [approving cause of action for intentional infliction of emotional distress but in case of an infected plaintiff].) But where the plaintiff has only been exposed to possible infection by engaging in ill-defined risky behavior, recovery would be founded upon an uncertainty. Exposure to HIV alone could certainly lead to some fear of AIDS. The courts of this State, though, have been loathe to entertain claims for emotional damage flowing from the possibility of coming down with an illness or disease absent infection or clinical evidence of a related condition sufficient to provide a rational, nonspeculative basis for the fear. Someone who has been exposed to HIV infection but has not come down with it has not suffered a physical injury for which a recovery in damages may be allowed. An HIV-positive person may never develop AIDS and a person who has been exposed to HIV may not become infected with HIV. (Comment, AIDS in the Workplace: A Legal Guide, 22 Conn L Rev 943, 946 [1990].) Plaintiff’s claim is therefore too speculative and remote. This defeats plaintiff’s claim whether cast in the clothes of a claim for intentional infliction of emotional distress, fraud or negligence.[5] (See, Hare v State of New York, 173 AD2d 523 [2d Dept 1991], affg 143 Misc 2d 281 [Ct Cl 1989]; Rittenhouse v St. Regis Hotel Joint Venture, 149 Misc 2d 452 [Sup Ct 1990]; Doe v Doe, 136 Misc 2d 1015 [Sup Ct 1987]; Note, Tort Liability for the Transmission of the AIDS Virus: Damages for Fear of AIDS and Prospective AIDS, 45 Wash & Lee L Rev 185 [1988]; cf., Plummer v United States, 580 F2d 72 [3d Cir 1978] [plaintiffs infected by tubercle bacilli]; Laxton v Orkin Exterminating Co., 639 SW2d 431 [Sup Ct, Tenn 1982] [ingestion of carcinogen].) The motion to dismiss the claim against defendant Vaughn is therefore granted without prejudice to reinstatement in the event plaintiff becomes infected with HIV.
The defamation cause of action is defective since it fails to set forth the particular libelous words allegedly used by defendant Feinstein. (CPLR 3016 [a].) If a need for discovery were a valid excuse, this requirement would be rendered nugatory. Furthermore, at least defendants McEnerney and Vaughn cannot be liable for the alleged defamation since it is not asserted that they had anything to do with the offending communication, which is also qualifiedly privileged.
*435 The fourth cause of action seeks to impose liability upon the Bank because it owns all the shares of Mortgage Company. Plaintiff believes the corporate veil very wispy and permeable indeed. No allegations of fraud, inequity, abuse of the corporate form or failure to observe corporate formalities are to be found in plaintiff’s pleading. Accordingly, the Bank is not a proper defendant.[6]
In sum, the first cause of action based upon termination for plaintiff’s "disability” is sustained while the second, third and fourth causes of action are dismissed in concert with the caveat (i.e., reinstatement) set out above.

. Defendants argue that the Legislature’s failure to enact a recently proposed bill to prohibit discrimination on the basis of HIV status proves that such discrimination is not now illegal. Defendants ignore the statements in the memorandum in support of legislation (at 2) that current law is only unclear and that legislation is needed to resolve "the uncertainties of judicial interpretations.” The fact that specific legislation was enacted to address sickle cell anemia, Tay-sachs disease and Cooley’s anemia can be similarly explained.

. The last fact is not asserted in the complaint in so many words but seems implicit in what plaintiff there alleges. Other facts helpful to plaintiff’s position — e.g., that Mortgage Company allegedly knew that Vaughn’s lover was dying of AIDS — cannot be considered since they are not contained in the complaint or in plaintiff’s opposing affidavit, but only in a memorandum of law.

. This cause of action is valid against Mortgage Company, but not Vaughn; the liability of defendants Feinstein and McEnerney depends upon their power over personnel decisions. (Patrowich v Chemical Bank, 63 NY2d 541 [1984].) The employer is liable under section 296 (1) (a) only if it approved or acquiesced in the discriminatory conduct. (Matter of State Div. of Human Rights v St. Elizabeth’s Hosp., 66 NY2d 684 [1985].) This should present a question of fact.

. Defenses of consent, assumption of the risk and comparative negligence have public policy implications.

. The last of these theories of course is preferable from the plaintiiFs point of view since it is not necessary to establish intent, which in its narrowest sense is unlikely to be present in many cases of this nature.

. Defendant Vaughn also moves pursuant to CPLR 3211 (a) (8), but that issue need not be addressed.