OPINION OF THE COURT
Joan B. Lefkowitz, J.
FACTUAL BACKGROUND
During the period February 1980 until the summer of 1989 plaintiff and Robert Lawson, now deceased, engaged in unprotected sexual intercourse (vaginal, fellatio and cunnilingus). Beginning in the summer of 1989 the parties made sporadic use of condoms. Plaintiff and Mr. Lawson lived together for several years and contemplated marriage.
Plaintiff alleges in her complaint that prior to his death, Robert Lawson contracted "HIV (AIDS) Virus, that eventually caused his death and failed to so advise plaintiff at any time during their relationship”. Decedent is survived by a daughter. Plaintiff sues the estate of Robert Lawson for $1,000,000 damages for intentional tort and negligence. Defendant denies the allegations and asserts an affirmative defense of culpable conduct and assumption of risk.
Plaintiff claims that Mr. Lawson became infected with the HIV virus sometime in 1990 as she was told that by Mr. Lawson on his deathbed in December 1991. She stated that Mr. Lawson’s best male friend died in 1990 and she believes now that Mr. Lawson and that friend had a homosexual relationship.
As of February 1993 plaintiff has been tested three times for the HIV virus with negative results. The last test was on January 15, 1993.
This action was commenced in June 1992.
ARGUMENTS
Defendant moves for summary judgment dismissing the complaint on two grounds: (1) that plaintiff has not suffered a physical injury and absent a verifiable precipitating event, the claim is not cognizable; and (2) the only proof of sexual conduct between plaintiff and the decedent is her word and such testimony would be barred under the Dead Man’s Statute, CPLR 4519, so that the case could never be proven at trial.
*527 Plaintiff vigorously opposes the motion through her counsel’s affidavit, claiming that the law supports an AIDS-phobia claim where, as here, there exists indicia of legitimacy and, further, that on a motion for summary judgment the court may consider evidence that might ultimately be barred by statute at trial.
[The court discussed the principles applicable to summary judgment motions and held that the Dead Man’s Statute (CPLR 4519) did not bar evidence of plaintiffs sexual activity with defendant while he was alive, so that the merits of the phobia claim had to be addressed. The court also observed that claims for emotional distress without physical injury were recognized in New York.]
PHOBIA CASES
In the landmark decision of the Court of Appeals in Ferrara v Galluchio (5 NY2d 16 [1958], rearg denied 5 NY2d 793; annotated at Damages — Anxiety Future Condition, 71 ALR2d 338, superseded in Annotation, Damages — Future Disease, 50 ALR4th 13), the Court sustained a claim of cancer phobia upon a statement by a physician to the patient after a radiation burn that she might contract cancer. The circumstances surrounding the incident — the radiation burn and doctor’s advice — provided a "guarantee of genuineness” to the claim (5 NY2d, at 21; also see, Potter v Firestone Tire & Rubber Co., 6 Cal 4th 965, 25 Cal Rptr 2d 550, 863 P2d 795 [1993] [distinguishing between fear of cancer and cancer phobia]).
Nevertheless, the courts of this State have rejected cancer phobia and cancerlike-phobia claims (i.e., asbestosphobia) where there were no chemical manifestations of the disease and no reasonable basis that the disease would develop. (Winik v Jewish Hosp., 31 NY2d 936 [1972]; Conway v Brooklyn Union Gas Co., 189 AD2d 851 [2d Dept 1993]; Acevedo v Consolidated Edison Co., 151 Misc 2d 347 [Sup Ct, NY County 1991] , mod 189 AD2d 497 [1st Dept 1993]; Rittenhouse v St. Regis Hotel Joint Venture, 149 Misc 2d 452 [Sup Ct, NY County 1990], revd on other grounds 180 AD2d 523 [1st Dept 1992] .) Similar judicial reluctance appears in other fear or phobia claim cases. (Creed v United Hosp., 190 AD2d 489 [2d Dept 1993]; De Rosa v Stanley B. Michelman, P. C., 184 AD2d 490 [2d Dept 1992]; Vossler v Amin, 175 AD2d 570 [4th Dept 1991]; Lancellotti v Howard, 155 AD2d 588 [2d Dept 1989].) *528 The policy reason behind these rulings has less to do with feigned claims; rather, it is the guarantee of trustworthiness of the claim that is lacking, as recovery for damages for the possibility of obtaining a future disease as a result of a present physical injury requires medical proof of a reasonable certainty that such developments will occur. (Matott v Ward, 48 NY2d 455, 461 [1979]; Strohm v New York, Lake Erie & W. R. R. Co., 96 NY 305 [1884].) Where medical proof is sufficient, phobia claims are compensable. (36 NY Jur 2d, Damages, § 98 [other authorities deleted for publication].)
SEXUALLY TRANSMITTED DISEASES

Duty of Partners

The law of tortious wrongs, intentional and negligent, recognizes claims for sexually transmitted diseases (STD). (White v Nellis, 31 NY 405 [1865] [venereal disease]; Maharam v Maharam, 123 AD2d 165, 170-171 [1st Dept 1986] [genital herpes]; Doe v Roe, 157 Misc 2d 690 [Just Ct, Rockland County 1993] [chlamydia]; Annotation, Tortious Transmission of Venereal Disease, 40 ALR4th 1089; Porter, Cause of Action for Negligent Transmission of Contagious or Infectious Disease, in 22 Causes of Action, at 1 [1991]; 43 Am Jur Trials 157, Tort Liability Between Sexual Partners; Note, Liability in Tort for the Sexual Transmission of Disease; Genital Herpes and the Law, 70 Cornell L Rev 101 [1984].) The usual principles underlying causes of action apply, to wit: defendant must have owed a duty to the plaintiff that was breached and proximately caused the condition complained of. The duty has been found to exist in the relationship between the parties where the defendant knew or should have known that he had a communicable disease. (Doe v Roe, supra; R.A.P. v B.J.P., 428 NW2d 103 [Minn 1988] [herpes].) Similar rules apply to AIDS cases (C.A.U. v R.L., 438 NW2d 441 [Minn 1989]; Dornette, Aids and The Law §§ 2.24, 8.1, 8.2, 8.3, 8.4, 8.9 [Wiley & Sons 1987] [hereafter Dornette]; Herman & Schurgio, Legal Aspects of Aids §§ 3.16-3.19 [Callaghan 1991]; AIDS Law & Litigation Reporter, vols 1-4, and Monthly Review; Comment, You Never Told Me * * * You Never Asked; Tort Liability for the Sexual Transmission of AIDS, 91 Dick L Rev 529, 537-549 [1986].) However, in New York for policy reasons against involuntary testing, AIDS is not listed by the State health authorities as a sexually transmittable disease, though it is communicable through sexual contact. (Matter of New York State Socy. of *529 Surgeons v Axelrod, 77 NY2d 677, 682 [1991]; see, Matter of Doe v Coughlin, 71 NY2d 48, 57, 60 [1987]; Doe v Roe, 155 Misc 2d 392, 398 [Sup Ct, Onondaga County 1992], mod 190 AD2d 463 [4th Dept 1993]; Matter of Doe v City of New York, 15 F3d 264 [2d Cir 1994] [constitutional right to privacy recognized as to HIV status]; cf, Public Health Law § 2785; Doe v State of New York, 152 Misc 2d 922 [Ct Cl 1991]; Flynn v Doe, 146 Misc 2d 934 [Sup Ct, NY County 1990] [no legal justification to use pseudonyms for true names when decedent died of AIDS in action against estate for decedent’s concealment of condition].)

AIDS

Acquired Immune Deficiency Syndrome, for which AIDS is an acronym, is a disease that affects the human immune system by way of a human immunodeficiency virus (HIV). Scientists have also referred to HIV as HTLV-III (Human TLymphotropic Virus Type III) and LAV (lymphadenopathy). (Note, First, Do No Harm, 12 Pace L Rev 665, 668, n 14 [1992].) Persons with AIDS are infected with HIV and have a T-cell count of less than 200 and exhibit one or more of several symptoms listed by the Federal Centers for Disease Control. (Sangree, Control of Childbearing by HIV-Positive Women: Some Responses to Emerging Legal Policies, 41 Buff L Rev 309, 311, n 2 [1993]; Dornette, op. cit., § 1.15, and Appendix B, at 264-266; Am Jur Proof of Facts 3d, Cyclopedic Medical Dictionary, AIDS, at 53-55.) There is no known cure for AIDS which is always fatal (Matter of New York State Socy. of Surgeons v Axelrod, 77 NY2d 677, supra), since it destroys the body’s ability to defend itself against infection. (Dornette, op. cit., § 3.2; 2 Gordy-Gray, Attorney’s Textbook of Medicine [j]J 46.10-46.30.) It has been estimated that Wi million persons in the United States (and 5 million worldwide) have the HIV virus (Note, Can HIV-Negative Plaintiffs Recover Emotional Distress Damages for Their Fear of AIDS?, 62 Ford L Rev 225, 226 [1993]). Approximately 210,000 persons in the United States have died from AIDS or complications thereof. (Consummate Politician on the AIDS Front, NY Times, Feb. 15, 1994, at Cl.)
In discussing the qualities, etiology, epidemiology and methodology of AIDS the court is taking judicial notice of those medical facts which are now considered indisputable. (Matter of Lahey v Kelly, 71 NY2d 135, 143 [1987]; People v Juan R., *530 153 Misc 2d 400, 404 [Sup Ct, Bronx County 1992]; Faya v Almaraz, 329 Md 435, 620 A2d 327, 331 [1993] [other authorities deleted for publication].)
Insofar as relevant to this case the epidemiology of AIDS is communicable through heterosexual contact, oral and vaginal. (Dornette, op. cit., § 1.13; Ordway v County of Suffolk, 154 Misc 2d 269, 272 [Sup Ct, Suffolk County 1992]; Castro v New York Life Ins. Co., 153 Misc 2d 1, 6 [Sup Ct, NY County 1991].) It is transmitted by exchange of certain bodily fluids including blood and semen. (Dornette, op. cit., § 3.6; Funeral Servs. by Gregory v Bluefield Community Hosp., 186 W Va 424, 413 SE2d 79, 82 [1991].)
Worldwide the classification of AIDS is considered either Type-I or Type-II. Type-II is so rare in the United States that testing for it is not ordinarily done except by blood centers. (Note, Can HIV-Negative Plaintiffs Recover Emotional Distress Damage for Their Fear of AIDS?, 62 Ford L Rev 225, 243-245, 260.) The current testing mechanisms for either Type-I or II are considered more than 99% reliable. (Ibid.)
There are generally three categories of AIDS: (1) the full blown AIDS disease involving a breakdown of the immunological system; (2) AIDS-Related Complex (ARC) which is a milder form of the disease with some physical symptoms; and (3) asymptomatic with a retrovirus in the system but no abnormal infections. (Doe v Roe, 139 Misc 2d 209, 211 [Sup Ct, NY County 1988]; Annotation, AIDS — Custody & Visitation, 86 ALR4th 211, 214.) A person in the third category may never develop the disease. The second category is considered a viral precursor to AIDS. A person who tests positive for the HIV virus is called "seropositive”. (Note, First, Do No Harm, 12 Pace L Rev 665, 667, n 9.)
The AIDS virus may be dormant for a long period described variously as "years” (Dornette, op. cit., § 6.12, at 110), five years or more (Ordway v County of Suffolk, 154 Misc 2d 269, 270, supra), a 7- to 10-year incubation period (Burk v Sage Prods., 747 F Supp 285, 288 [ED Pa 1990]) or "decades” (Note, The Fear of Disease as a Compensable Injury; An Analysis of Claims Based on AIDS Phobia, 67 St John’s L Rev 77, 90-91, n 100 [1993]). For this reason the Appellate Divisions of the First and Second Departments have held CPLR 214-c applicable to AIDS cases so that the normal Statute of Limitations is extended for three years from the date of discovery of the disease or from when it should have been discovered. (Prego v *531 City of New York, 147 AD2d 165 [2d Dept 1989]; Di Marco v Hudson Val. Blood Servs., 147 AD2d 156 [1st Dept 1989]; Dornette, op. cit., § 8.12; Annotation, Limitations — Contracting of Disease, 11 ALR2d 277 [1950]; see, Mondello v New York Blood Ctr. — Greater N. Y. Blood Program, 80 NY2d 219, 224-225 [1992].)
Two tests are used to determine if the HIV antibody exists in a person: the Enzyme-Linked Immunosorbent Assay (ELISA) and Western Bloc, which, taken together, are considered 99.9% accurate. (Faya v Almaraz, 329 Md 435, 446, n 4, 620 A2d 327, 332, n 4, supra; Doe v Roe, 139 Misc 2d 209, 212, supra.) The current medical consensus is that 95% of all persons who will test positive for the virus do so within six months of exposure. (Kerins v Hartley, 17 Cal App 4th 713, 21 Cal Rptr 2d 621, 623 [1993], petition for review granted 24 Cal Rptr 2d 236, 860 P2d 1182 [1993];[1] Faya v Almaraz, supra, 620 A2d, at 332, 337; Doe v Roe, supra, 139 Misc 2d, at 212-213; Note, The Fear of Disease as a Compensable Injury; An Analysis of Claims Based on AIDS Phobia, 67 St John’s L Rev 77, 99-100, and especially n 177; cf., Note, Tort Liability for the Transmission of the AIDS Virus: Damages for Fear of AIDS and Prospective AIDS, 45 Wash & Lee L Rev 185, 197 [1988] [suggesting 14 months as appropriate time frame]; Vargo, The HIV Test 50, 67 [Pocket Books 1992].)
"Persons exposed to HIV usually develop detectable levels of antibody against the virus within 6-12 weeks of infection”. (Note, Can HIV-Negative Plaintiffs Recover Emotional Distress Damages for Their Fear of AIDS?, 62 Ford L Rev 225, 243, n 167, quoting from Public Health Service Guidelines for Counseling and Antibody Testing to Prevent HIV Infection and AIDS, 36 Morbidity & Mortality Wkly Rep 509 [Aug. 1987]; Doe v Roe, 139 Misc 2d 209, 212-213, supra.) Consequently testing for HIV is advisable on expiration of three months from exposure as results obtained before that time may not be reliable. An additional (or initial) test (or tests) six months from exposure should virtually verify HIV status, positive or negative, with the need for further testing to be nonexistent.
*532 "Exposure to HIV does not necessarily result in infection. Even a direct exposure through unprotected sex or needle sharing is by no means certain to result in transmission.” (AIDS Practice Manual 2-14 [3d ed 1992].)
aids phobia—

New York Cases

New York and a minority of jurisdictions have recognized claims for damages for emotional distress caused by exposure to AIDS. (Dornette, op. cit., § 2.27; 86 CJS, Torts, §48 [1993 Cum Ann Pocket Part]; Note, The Fear of Disease as a Compensable Injury; An Analysis of Claims Based on AIDS Phobia, 67 St John’s L Rev 77, 77-89; Annotation, Toxic Exposure — Mental Distress, 6 ALRSth 162 [1992]; 1 Stein, Personal Injury Damages § 3:13, at 18-20 [2d ed 1993 Supp].) Even jurisdictions or cases that deny the claim do so on the usual tort rules of not awarding damages for speculative injuries based on nonexposure to the disease or an unrealistic probability of contracting it from that exposure.
In Doe v Doe (136 Misc 2d 1015 [Sup Ct, Kings County 1987]) in a divorce action the plaintiff wife asserted causes of action for AIDS phobia on the ground that her husband had engaged in homosexual activity. The court rejected application of cancer phobia, zone of danger and lack of physical injury cases that sustained claims for emotional distress, holding that "a specific precipitating incident [on] which * * * the alleged emotional distress” arose existed in those cases but was not present here (136 Misc 2d, at 1020). The causes of action for AIDS phobia were dismissed. Of significance, it was not shown that either party actually had AIDS or the HIV antibody.
In Hare v State of New York (143 Misc 2d 281 [Ct Cl 1989], affd 173 AD2d 523 [2d Dept 1991], lv denied 78 NY2d 859 [1991]) a hospital employee bitten by a prison inmate sued the State for negligence and lack of supervision, claiming AIDS phobia. The plaintiff had tested negative for the AIDS virus three times and there was no proof that the inmate had the virus. The claim for emotional distress caused by the bite was dismissed.
Even where plaintiff can show some exposure the claim has been conditionally dismissed. (Petri v Bank of N. Y. Co., 153 Misc 2d 426 [Sup Ct, NY County 1992].) In Petri, the plaintiff sued his same sex lover, who had been HIV-positive for three *533 years, for having sex during this period with plaintiff without informing plaintiff of the condition. The court observed that a claim in negligence or misrepresentation on these facts was appropriate (153 Misc 2d, at 433). However, in dismissing the claim without prejudice to reinstatement if plaintiff developed the HIV antibody the court held (153 Misc 2d, at 434): "where the plaintiff has only been exposed to possible infection by engaging in ill-defined risky behavior, recovery would be founded upon an uncertainty. Exposure to HIV alone could certainly lead to some fear of AIDS. The courts of this State, though, have been loathe to entertain claims for emotional damage flowing from the possibility of coming down with an illness or disease absent infection or clinical evidence of a related condition sufficient to provide a rational, nonspeculative basis for the fear. Someone who has been exposed to HIV infection but has not come down with it has not suffered a physical injury for which a recovery in damages may be allowed. An HIV-positive person may never develop AIDS and a person who has been exposed to HIV may not become infected with HIV. (Comment, AIDS in the. Workplace: A Legal Guide, 22 Conn L Rev 943, 946 [1990].) Plaintiff’s claim is therefore too speculative and remote.”
Similarly, in Ordway v County of Suffolk (154 Misc 2d 269, supra), the court granted summary judgment dismissing the claim for AIDS phobia where a physician sued the county for failing to advise him that a prison patient, on whom he operated, had the HIV virus, alleging that he failed to take proper precautions to protect himself. The court noted that there was no precipitating incident that actually exposed plaintiff to the disease (154 Misc 2d, at 272-273; also see, Matter of North Shore Univ. Hosp. v Rosa, 194 AD2d 727 [2d Dept 1993] [no cause of action for mental anguish when patient, who is not infected with HIV virus, was treated under the infectious disease protocol in effect at the time of his treatment]).
The only reported decision in New York upholding an AIDS-phobia claim is Castro v New York Life Ins. Co. (153 Misc 2d 1, supra) where the plaintiff was injured when his thumb was pricked by a hypodermic needle in garbage that he was gathering to dispose.[2] He claimed that he might contract AIDS *534 and the court denied a motion to dismiss. Significantly, plaintiff refused to reveal the results of AIDS tests. In my opinion, while a precipitating incident existed in Castro there was no proof of exposure and the case should be limited to its unique facts.

Other Jurisdictions

In Poole v Alpha Therapeutic Corp. (698 F Supp 1367 [ND Ill 1988]) plaintiff’s husband, a hemophiliac, contracted AIDS from an injection; yet, while acknowledging that plaintiff could be infected through marital sex, the claim for emotional anguish and fear was dismissed. The same result occurred in Funeral Servs. by Gregory v Bluefield Community Hosp. (186 W Va 424, 413 SE2d 79, supra) where a mortician embalmed a corpse who had AIDS and was not told of the disease until after completion of his services.
In contrast to Castro v New York Life Ins. Co. (153 Misc 2d 1, supra) is Burk v Sage Prods. (747 F Supp 285, supra) where the plaintiff paramedic injured himself on a needle on a floor of a hospital where AIDS patients resided and sued for his phobia. He tested negative on five occasions, the last test being 13 months after alleged exposure. The court granted summary judgment dismissing the claim holding that the fear of contracting the disease was too speculative. While plaintiff proved a precipitating incident he did not prove exposure. The court commented (747 F Supp, at 288):
"It is a medically accepted fact, however, that a person who has been infected will still test positive [emphasis in original] Jfor the HIV antibody during this latency period when no symptoms are evident, assuming the accuracy of the HIV test. Morbidity and Mortality Weekly Report, July 21, 1989, Vol. 38, No. S-7. It is extremely unlikely that a patient who tests HIV-negative more than six months after [emphasis added] a potential exposure will contract the disease as a result of that exposure. Id., at 5. * * *
"Although neither party has noted the fact, plaintiff can *535 now be confident, to a high degree of medical certainty, that he will not contract AIDS as a result of the needle-stick injury. The court is reluctant to allow someone to recover for fear of contracting a disease after it has become substantially likely that he will not develop the illness.”
Apropos of Petri v Bank of N. Y. Co. (153 Misc 2d 426, supra) the court in Lubowitz v Albert Einstein Med. Ctr. (424 Pa Super 468, 623 A2d 3 [1993]) granted summary judgment dismissing the claim with leave to sue later if AIDS develops (424 Pa Super, at 471, n 3, 623 A2d, at 5, n 3 [possible tainted donated placental blood but plaintiff tested negative after testing positive]).
A case that sustained an AIDS-phobia claim is Johnson v West Va. Univ. Hosps. (186 W Va 648, 413 SE2d 889 [1991]) where a police officer was bitten by an HIV infected patient who first bit himself so that he had blood in his mouth at the moment of the second bite. Plaintiff tested negative for HIV but the court sustained a recovery on a jury verdict on the ground of a precipitating event, exposure and reasonable fear.
Two other cases permitted the plaintiff to recover for emotional distress during a "window of anxiety” period where there is proof of a precipitating event and exposure. (Kerins v Hartley, 17 Cal App 4th 713, 729, 21 Cal Rptr 2d 621, 632, supra [HIV doctor operated on plaintiff without informing her of his infection; plaintiff tested negative but is emotionally unable to retest];[3] Faya v Almaraz, 329 Md 435, 455, 620 A2d 327, 337, supra.) The window of anxiety period limits damages in AIDS-phobia cases to the period that the fear is considered reasonable; that is, generally, the period between when plaintiff learned of the exposure and receipt of HIV-negative results.
Actually, the window of anxiety period should be narrowed to a time measured from discovery of exposure (or when exposure should have been discovered) and viability of the test procedure. On this point one author, James Maroulis, has observed that the person claiming damages for AIDS phobia has a duty to mitigate damages and should be obligated to take the HIV test three months after exposure. (Note, Can HIV-Negative Plaintiffs Recover Emotional Distress Damages for Their Fear of AIDS?, 62 Ford L Rev 225, 257; cf., Kaehne v Schmidt, 163 Wis 2d 524, 472 NW2d 247 [1991] [unscreened blood transfusion; AIDS-phobia claims sustained from date of *536 exposure until date of test two years later although plaintiff was advised shortly after transfusion to take AIDS test].)
One court did not even permit recovery for this window period on the reasoning that once the claimant tests negative after six months of alleged exposure, he really was not exposed. (Rossi v Almaraz, 59 USLW 2748 [Md Cir Ct 1991] [surgeon who died of AIDS complications in November 1990 had operated on patient in November 1989 when doctor knew he was HIV-positive; patient tested negative in December 1990].) Other jurisdictions have sustained causes of action for AIDS phobia without proof of actual exposure. (Howard v Alexandria Hosp., 245 Va 346, 429 SE2d 22 [1993] [unsterilized surgical instrument used on patient; tests for AIDS negative]; Marchica v Long Is. R. R., 810 F Supp 445 [ED NY 1993] [under Federal Employers’ Liability Act a railroad employee pricked by a needle found on employer’s property, who tested negative one year after the incident, can sue for AIDS phobia]; Carroll v Sisters of St. Francis Health Servs., 1992 WL 27617, 3, 61 USLW 2291 [Tenn Ct App 1992] [visitor at hospital pricked by discarded contaminated needles in container that looked like a paper towel dispenser; HIV tests several times over three years all negative; no actual proof of exposure; in two to one decision, appeals court reversed summary judgment dismissing complaint for mental anguish as it reviewed an affidavit of a professor of Clinical Laboratory Science at the University of Tennessee (who was a registered specialist in public health and medical laboratory microbiology) in opposition to the motion as raising factual issues and presupposing the medical view that the needles came from AIDS patients; the court concluded that a question of fact as to the reasonableness of the fear of AIDS existed and for what period of time, i.e., the "period of mental anguish, of course, would be confined to the time between discovery of the ingestion and the negative medical diagnosis or other information that puts to rest the fear of injury”]; see, Note, Can HIV-Negative Plaintiffs Recover Emotional Distress Damages for Their Fear of AIDS?, 62 Ford L Rev 225 [author rejects nonexposure cases that sustain claims for AIDS phobia].)

Further Discussion on AIDS Phobia

While not a phobia case, the Court in Prego v City of New York (147 AD2d 165, supra), in construing CPLR 214-c as extending the Statute of Limitations in AIDS cases, said otherwise (at 173): "A recently exposed plaintiff who recog *537 nized that he or she was in danger could not institute a timely suit on the basis of his or her apprehensions alone, since he or she would be nonsuited for lack of an injury, and by the time the injury was apparent, the Statute of Limitations would have expired.” (See, Dornette, op. cit, § 8.12; cf., AIDS Practice Manual 20-59 — 20-60; Herman & Schurgin, Legal Aspects of Aids § 3.40; Comment, You Never Told Me * * * You Never Asked; Tort Liability for the Sexual Transmission of AIDS, 91 Dick L Rev 529, 551.)
In the AIDS-phobia law review article I have referred to from time to time (Note, The Fear of Disease as a Compensable Injury; An Analysis of Claims Based on AIDS Phobia, 67 St John’s L Rev 77), the author (Debbie E. Lanin) states (id., at 99-101): •
"it is submitted that before a claim for the recovery of damages for the fear of developing AIDS may proceed, the plaintiff must prove both the exposure to the HIV virus and that the fear was reasonable. Absent either requirement, the claim should be dismissed as a matter of law. Additionally, present medical research indicates that a negative HIV test six months after exposure virtually eliminates the likelihood that such exposure will result in the future development of AIDS. Thus, HIV testing should also be a critical factor in a court’s assessment of whether a claim for AIDS phobia may proceed. A six-month period is suggested, after which, assuming negative results, fear of contracting AIDS would not be reasonable. [The author notes that the period may be adjusted as needed.]
"Finally, to mitigate the harshness of this standard it is proposed that a plaintiff who can prove exposure but tests negative for HIV should be permitted to recover for the emotional distress suffered during the six-month period in which the HIV tests were inconclusive.”
Of course, "A negative blood test proving that HIV has not entered the plaintiff’s body does not erase the plaintiff’s past fear of AIDS”. (Note, Tort Liability for the Transmission of the AIDS Virus: Damages for Fear of AIDS and Prospective AIDS, 45 Wash & Lee L Rev 185, 200.) For that reason it would be unfair to dismiss plaintiff’s claims as premature even if without prejudice.
CONCLUSION
Plaintiff has made the requisite showing in opposition to the *538 motion for summary judgment to establish prima facie her claim of emotional distress for the fear of contracting AIDS. The law recognizes that the decedent owed a duty to plaintiff not to intentionally or negligently inflict mental distress. The plaintiff has proven probable exposure to the disease. Whether defendant did knowingly or negligently expose plaintiff are questions for the jury. Similarly, plaintiffs knowledge, actual or constructive, of decedent’s condition and his liaison with another man as well as participating in unprotected sexual activity are for the triers of the facts on damages. Additionally, as in other cases where probabilities must be weighed (Restatement of Torts § 912, comment e, at 583-584; Gold, Causation in Toxic Torts: Burdens of Proof, Standards of Persuasion, and Statistical Evidence, 96 Yale LJ 376 [1986]), the issue of the reasonableness of the plaintiffs fear and for what period of time that fear is compensable are questions for the jury after hearing her testimony and upon a full review of actual medical testimony.
Accordingly, the motion for summary judgment is denied.
[Portions of opinion omitted for purposes of publication.]

. On February 24, 1994 the Supreme Court of California vacated the determination in Kerins v Hartley (28 Cal Rptr 2d 151, 868 P2d 906) and remitted the matter to the Court of Appeals of the Second District for reconsideration in light of the Supreme Court’s decision in Potter v Firestone Tire & Rubber Co. (25 Cal Rptr 2d 550, supra). In Potter the court set forth burden of proof principles in toxic tort cases, absent physical injury, and discussed elements of damages.

. In Sargeant v New York Infirmary Beekman Downtown Hosp. (NYLJ, Feb. 3, 1994, at 1, col 3 [Sup Ct, NY County, index No. 16068/91]), an AIDS-phobia case was scheduled to go to trial. There the plaintiff claimed that the *534 hospital disregarded his instructions not to give him a blood transfusion. One facet of the case is a claim for fear of contracting AIDS. The court has learned that no motion to dismiss that claim had been presented prior to trial. The plaintiff tested negative and whether the blood was properly screened or was tainted (which, it appears, it was not) are issues to be decided in the case. The claims were scheduled to be submitted to the jury on or about March 1, 1994.

. But see, n 1, supra.