OPINION OF THE COURT
Norman C. Ryp, J.
"He who refuses aid which he has the power to give is accountable to justice.” (Flavius Josephus, Against Apion II 27 [37 A.D.].)
A. ISSUES
(1) Whether a 30-day notice to terminate tenancy under Real Property Law § 232-c, by a nonprofit hospital which only alleges, "Tenant initially obtained possession of the premises as an incident of his employment by Landlord. The employment is terminated.”, is legally sufficient?
(2) Whether a staff housing lease which provides for termination "without cause” is enforceable where the tenant/employee alleges a prior AIDS disability revelation and retaliation? A discriminating issue of first impression.
B. PROCEDURAL HISTORY AND FACTS
In these two holdover summary proceedings concerning subject premises, i.e., (Booth House) No. 318 East 15th Street, New York, New York (Apts. No. 1C Room B — Curt Sarris and 8N — Ramon Ramos), these two identical counsels’ respondents’ CPLR 408 and 3102 motions for discovery and petitioner’s cross motions directing an inquest for respondents’ failure to timely file their answer are consolidated for determination.
Both petitions were grounded upon petitioner’s entry into a written lease agreement with each respondent (Sarris — Apr. 23, 1984; Ramos — Apr. 13, 1982) of subject premises sought to be recovered as incident to employment (Sarris — over 5 years as data entry clerk; Ramos — over 25 years as inventory clerk and rehabilitation worker) — each terminated without cause under paragraph 1 of said leases by 30-day prior written notices, respectively dated (Sarris) February 7, 1992 and (Ramos) January 29, 1992.
Previously, respondents moved to dismiss under CPLR 3211 (a) (2) (lack of subject matter jurisdiction), (7) (legal insufficiency) and (8) (personal jurisdiction), which this court denied by order dated April 29, 1992, without prejudice, following *800 joinder of issue (wherein the court directed respondents to serve and file their answer on or before May 20, 1992) for insufficient supporting facts, with a trial date fixed for May 28, 1992 on the Housing Part 18 Calendar. Thereafter, respondents served and filed their respective notices of appearance and answers curiously dated June 1 and filed July 10, 1992, which interposed various denials and affirmative defenses including lack of personal jurisdiction and subject matter jurisdiction (first, second, third, fifth, sixth and seventh); legal sufficiency (fourth); rent-stabilized tenancy (third and eighth); loches (ninth) and retaliatory eviction (under Real Property Law § 223-b) following respondents’ disclosure of AIDS diagnosis in violation of common law and Administrative Code of City of New York, plus two counterclaims, the first claiming $500,000 for mental anguish, severe mental distress and financial hardship and the second for $5,000 for legal fees.
The petition alleges that petitioner, a New York State limited profit housing company, organized and existing under article II of the Private Housing Finance Law owns and operates Booth House, which includes subject premises. According to the petitioner, subject premises are exempt, as nonprofit hospital institutions, from the New York City Rent and Rehabilitation Law (Administrative Code of City of NY § 26-403 [e] [2] [g]) and Rent Stabilization Law (RSL; Administrative Code, tit 26, ch 4; Emergency Tenant Protection Act of 1974 [ETPA; L 1974, ch 576, § 4] § 5 [a] [6], as amended by Omnibus Housing Act of 1983 [OHA; L 1983, ch 403] § 55; see, New York Univ. v Owens, NYLJ, June 6, 1990, at 21, col 2 [App Term, 1st Dept 1990]). The only RSL exception appears to be if respondent tenant was not affiliated or employed by the institution at initial occupancy or signed an initial lease, without affiliation or employment, before July 1, 1978. (See, Trustees of Columbia Univ. v James, 127 Misc 2d 81 [App Term, 1st Dept 1985], affd without opn 123 AD2d 904 [1st Dept 1986]; see, RSL [Administrative Code] § 26-511 [c] [9].) Such exception does not appear, based upon submissions, to apply to either respondent. Petitioner is subject to New York State Code of Rules and Regulations, including 9 NYCRR 1727-5.3 ("Termination by housing company”) which covers grounds where a certificate of no objection by the New York State Commissioner of Housing and Community Renewal is and is not required. 9 NYCRR 1727-5.3 (c) (1) ("Certificate not required”) provides: "where the tenant occupies an apartment in a building operated by a company for the purposes of staff *801 housing and said tenant is not a staff member, employee or student of a college, university or hospital”.
It further appears that subject (Booth House) lease agreements in paragraph 13 therein further provides: "this agreement shall terminate automatically upon the date that tenant ceases to be employed by the Landlord, and no notice of said termination shall be required.”
While the foregoing appears to mandate this court to deny, per se, the current motion, referred to this court on June 30, 1992 (CPLR 408 and 3124 — current status as a rent-stabilized tenant) in the absence of evidence bringing respondents within the above-noted RSL exception, this does not simply relegate the respondents to the compassion and "mercy of the court”.
C. LEGAL ANALYSIS AND FINDINGS
Upon a full review of all the pleadings and motional submissions, this court reconsiders, whether under CPLR 2001 ("Mistakes, omissions”, etc.) or converted under CPLR 2221 as a motion to reargue/renew, in the interest of justice, equity and judicial economy, its decision and orders dated May 6, 1992, under a misapprehension of law, and fact, which denied respondent’s CPLR 3211 (a) (7) motion to dismiss.
The bases are twofold.
1. 30-Day Notice of Termination.
First, paragraph 4 of the petition alleges in each case: "On or about April [sic: 23, 1984 — Sarris; 13, 1982 — Ramos], petitioner as landlord, entered into a written agreement of lease with respondent tenant for the premises sought to be recovered as an incident to the employment of respondent by petitioner, for a term which ended as a result of the termination of respondent’s employment by petitioner.” As noted above, petitioner’s attorney in his supporting affirmation in opposition, both dated April 28, 1982, in each case alleged: "Neither the lease [Ex A] nor the regulations [Ex C] require any grounds or reasons for termination. It is the fact of termination and not the gravamen therefore that determines the right to continued occupancy.” While this court does not accept petitioner’s attorney’s legal conclusion, under the facts and circumstances herein (for the reasons set forth below), the current focus is upon the sufficiency of subject 30-day notice of termination.
In opposition, respondent alleged: "6. Specifically in its *802 petition, attached as Exhibit A, petitioner alleges that my employment was terminated without alleging how or when my employment terminated.”
Petitioner’s annexed (to petitions) 30-day notices, dated February 7 (Sarris) and January 29 (Ramos), 1992 (evidently correctly required, under Real Property Law § 232-c, by order of Judge Jay Stuart Dankberg, dated September 30, 1991, in a prior proceeding [L&T No. 88055/91] involving respondent Ramos et al.) respectively, state, inter alla, as follows: "Tenant initially obtained possession as an incident of his employment by Landlord. The employment has terminated.”
While respondent, Sarris, disputes this (claiming tenancy 8 years and employment 5 years), this is not salient at this point. The undisputed fact is that said 30-day notice omits any detail as to when (prior or by virtue of the 30-day notice, and if prior how long before same), how and where noticed (personally or by mail, with paycheck), in what form (written or oral) or why (at a minimum for nondiscriminatory reason [AIDS disability as respondents have claimed]). Thus, this notice which purports to terminate respondents’ tenancy is inadequate in that it fails to properly or effectively apprise respondents of specific grounds upon which petitioner intends to prove there is a valid termination of tenancy under RPAPL 741 (4). (See, Margolies v Lawrence, 67 Misc 2d 468 [Civ Ct, NY County 1971].) It simply canceled out respondents as employees and tenants by a bare conclusory allegation. Strict compliance with statutory requirements is necessary to give the court jurisdiction. (Giannini v Stuart, 6 AD2d 418 [1st Dept 1958]; Stratford Arms Hotel v Petty, NYLJ, Jan. 30, 1979, at 4, col 1 [App Term, 1st Dept].) A 30-day notice of termination concerns subject matter jurisdiction and cannot be retroactively cured. (Chinatown Apts. v Chu Cho Lam, 51 NY2d 786 [1980].)
For the aforementioned reasons, alone, this court finds, in fact and law, that the subject 30-day notices are insufficient in law, thus mandating dismissal of both petitions, without prejudice.
2. AIDS Disability Discrimination.
This court further finds, in fact and law, that notwithstanding the provisions of paragraphs 5 and 13 of the Booth House lease agreements that apparently allow termination of respondents’ employment (and ancillary housing tenancy) to be terminated "with or without cause”, such are subject to *803 New York City, New York State and Federal laws that bar employment discrimination because of a disability, which New York courts have found to include AIDS, a national epidemic with which respondents are alleged to be infected and the “real” reason for their termination. The latter, of course, is subject to proof at trial. If true, it is ironically tragic to both the alleged perpetrator petitioner, a noted health care institution which services this very court and the alleged victim respondents whose prognosis is uncertain, at best. Thus, in this court’s view, petitioner, in any identically grounded future holdover summary proceeding petition, where it is aware of an AIDS disability claim, must be prepared to give a nondisability discrimination reason.
Persons with AIDS have been found to be physically handicapped and disabled under: Administrative Code § 8-108 (New York City Human Rights Law); Executive Law § 292 (21) (New York State Human Rights Law); and 29 USC § 794 (Federal Rehabilitation Act of 1973, as amended; see, Barton v New York City Commn. on Human Rights, 140 Misc 2d 554, 560 [Sup Ct, NY County 1988], mod [penalty reduction from $15,000 to $5,000] and affd 151 AD2d 258 [1st Dept 1989]; see also, People v 49 W. 12 Tenants Corp., Sup Ct, NY County, Dec. 20, 1983 [index No. 43604/83]; Note: Asymptomatic Infection with the AIDS Virus as a Handicap under Rehabilitation Act of 1973, 88 Col L Rev 563 [1988]). If applicable, the discharge of an otherwise qualified individual employee with AIDS may violate section 102 (a) (“Discrimination — General rule”) of the Americans with Disabilities Act of 1990 (42 USC § 12101 et seq.; § 12112 [a]; Pub L 101-336 et seq., 104 Stat 1327 et seq., eff July 26, 1992 [for employees with over 25 or more employees]; see, Note, Group Health Benefits Discrimination Against AIDS Victims: Falling Through the Gaps of Federal Law — ERISA, the Rehabilitation Act and the Americans with Disabilities Act, 24 Loy of LA L Rev 1247 [June 1991]).
In 1991, the New York Court of Appeals in upholding the refusal of the New York State Commissioner of Health to add HIV infection as a communicable and sexually transmissible disease, under Public Health Law § 2311 (triggering isolation and quarantine, reporting, mandatory testing and contact tracing) unanimously declared: “AIDS is a disease which damages the individual’s immune system: those who develop it are vulnerable to unusual infections and cancers that do not generally pose a threat to anyone whose immune system is intact. At the present time there is no known cure for AIDS *804 and the percentage of HIV infected individuals who will develop it is not known.” (New York State Socy. of Surgeons v Axelrod, 77 NY2d 677, 682 [1991].)
AIDS in the United States is a "mature epidemic” with 218,000 cases and 139,000 deaths (compared to 10,000,000 in 1992, 40,000,000 by 2000 worldwide) reported, including 45,000 in 1992 which will rise until leveling off to 50,000 in 1994, with New York having the highest rate of HIV-infected cases in the United States, 44.8 per 1,000,000, from July 1991 through June 1992, according to the United States Center for Disease Control (CDC). (See, Eckholm, AIDS, Fatally Steady in the U.S., Accelerates Worldwide, NY Times, June 28, 1992, § 4, at 5.) According to the CDC, based upon statistics as of September 1990, prepared by the New York City Health Systems Agency for Union Square/Lower East Side (including subject premises [US Postal Service Zip Code 10003]), there were a total of 1,588 AIDS cases out of a total population of 197,267 for a total rate of 1,036 per 100,000 population, an increase of 79.5%. Petitioner’s HIV hospital utilization for residents in its Lower Manhattan catchment area was a commendable 24.4% in 1988. This favorably contrasts this health care provider, according to respondents, with an apparent discardable policy for its own hospital staff with the HIV virus. If so, such is truly tragic, since, according to the New York State Department of Health, Division of Epidemiology, there will be 54,978 projected cumulative CDC-defined AIDS cases for 1992 in New York State (21% of the United States total — more than any other State), with 83% thereof in New York City. (See, HIV/AIDS in New York State, AIDS Institute, NY State Dept of Health, May 1992.) Whether the VIII International Conference on AIDS, "correctly closed”, in Amsterdam, the Netherlands on July 24, 1992, with "hope, not despair” (NY Times, July 26, 1992, at 1, cols 3-5) remains to be seen.
D. CONCLUSIONS
Accordingly, for the foregoing reasons, respondents’ and petitioner’s current motions and cross motions are denied, as moot, and both petitions are dismissed, without prejudice.