SHIRLEY REA, as Executrix of PHILLIP J. REA, Deceased, Respondent-Appellant, v JORGE M. PARDO et al., Appellants-Respondents.

Fourth Department, December 18, 1987

## APPEARANCES OF COUNSEL

*Damon & Morey (Brian P. Crosby* and *Anthony J. Colucci, III,* of counsel), for Jorge M. Pardo, appellant-respondent.

*LeBouef, Lamb, Leiby & MacRae (Mary Betts, Ellen August* and *Michael A. Ellenberg* of counsel), for Medical Liability Mutual Insurance Company, appellant-respondent.

*James J. Moran, P. C.,* for respondent-appellant.

*Bower & Gardner (Howard R. Cohen* of counsel), for FOJP Service Corporation, *amicus curiae.*

## OPINION OF THE COURT

Denman, J.

This appeal requires us to determine the nature and scope of the physician's duty of confidentiality, specifically, whether a patient's authorization for disclosure of his medical records to his attorney for the purpose of investigating a malpractice claim justifies the physician's disclosure of those records to his liability insurer. We hold that the lawyer's request for the records in accordance with his client's authorization justifies the physician in forwarding them to his carrier.

This action was instituted by Shirley Rea, as executrix of the estate of her husband, Phillip J. Rea. Defendants are Jorge M. Pardo, M.D., Phillip's former physician, and Medical Liability Mutual Insurance Company (MLMIC), Pardo's liability insurer. Defendants appeal from that portion of an order of Supreme Court (133 Misc 2d 516) which denied their motions for summary judgment dismissing plaintiff's first cause of action against each defendant and, instead, searched the record and granted summary judgment to plaintiff on the issue of liability.* Plaintiff's first cause of action against Pardo alleged that he wrongfully disclosed Phillip Rea's medical records to MLMIC and her first cause of action against the insurer alleged that it wrongfully induced Pardo to make such disclosure.

---

* Plaintiff filed a cross appeal from so much of the same order as granted defendants' motions for summary judgment dismissing all other causes of action, but has failed to brief the issues raised on her cross appeal. In view of plaintiff's abandonment of the cross appeal, our review is limited to the propriety of the court's denial of summary judgment to defendants and granting of summary judgment to plaintiff on her first cause of action against each defendant.

Rea was treated by Dr. Pardo at St. Joseph's Intercommunity Hospital and at Pardo's office between February 1 and February 22, 1984. Several months later Rea discovered that he was suffering from cancer. He died in August 1985. Prior to his death Rea retained James Moran, an attorney, and on November 5, 1984 executed an authorization for release of his medical records to Moran. By letter dated November 9, 1984, accompanied by a copy of the authorization, Moran requested that Pardo forward copies of "all records and/or reports regarding your care and treatment" of Rea, including billings.

Dr. Pardo did not immediately comply with either the letter or Moran's repeated telephone requests for the records, but instead, at the request of MLMIC, forwarded the records to the carrier on January 10, 1985. In their affidavits Pardo and MLMIC stated that they believed that the request for release of the records to Moran indicated that a medical malpractice action against Pardo was about to commence. They also averred that Pardo was required to furnish his carrier with the records to protect his position under the notice provision of his medical malpractice liability policy. That provision states: "Notice. As soon as practicable, after becoming aware of an event which he or she has reason to believe may lead to a claim against him or her under the statement of insurance, or after receiving information of such a Claim against him or her, the insured shall give notice thereof in writing to the Company or its agent or authorized representative." According to defendants, the records were requested by MLMIC in order to evaluate the potential claim, timely investigate it, possibly avert a lawsuit, advise Pardo how to proceed, and, "if necessary, afford Dr. Pardo the best possible legal representation in the event that a malpractice suit was commenced." It is undisputed that the patient's records were used by the insurer only to investigate, evaluate, and prepare to meet the claim and that those records were never disclosed to anyone outside MLMIC.

From discussions with Pardo and representatives of the carrier, Moran learned of Pardo's release of the records to MLMIC on January 25, 1985. Moran informed the Reas and the insurer forwarded the records to Moran on that day. At his carrier's instruction, Dr. Pardo subsequently did the same. Although plaintiff now asserts that Moran was retained and the records sought to investigate a potential claim for medical malpractice against St. Joseph's Hospital, not Dr. Pardo, a medical malpractice action in fact was commenced against Dr. Pardo in June 1985. That action was discontinued by plaintiff

following her husband's death. This action was commenced by plaintiff in October 1985.

Following joinder of issue, Pardo and MLMIC moved for summary judgment dismissing the complaint in its entirety. The court denied defendants' motions for summary judgment dismissing the first cause of action against each defendant, searched the record, and granted partial summary judgment for plaintiff on her first cause of action. Relying on the fact that the attorney was under a duty not to reveal the contents of the medical records, the court rejected the contention that the patient waived his right to confidentiality by authorizing disclosure to his lawyer. The court also rejected the contention that disclosure of the records was justified by the notice and cooperation terms of the insurance policy. Finally, the court refused to accept the argument that defendants' actions were justified by their belief that Rea was planning to sue the doctor for malpractice. Although the court concluded that such disclosure might be justified where defendants had a reasonable belief that a lawsuit was imminent, the court found that defendants' belief in this case was not reasonable as a matter of law. Instead, the court found that Pardo's anticipation of a lawsuit was, at the time he released the records to his carrier, based upon "mere speculation" and "conjecture" *(Rea v Pardo,* 133 Misc 2d 516, 518, *supra).*

On appeal, defendants assert several grounds for reversal of which we consider only one. They argue that the doctor's disclosure of his patient's medical records to the insurer, and the insurer's solicitation of such disclosure, were justified in response to the patient's authorization of disclosure of those records to his lawyer. We agree. In *MacDonald v Clinger* (84 AD2d 482), we established that a physician (in that case a psychiatrist) has a duty not to make unauthorized disclosures of confidential information obtained in the course of the physician/patient relationship. However, we noted that the right of confidentiality is less than absolute *(see also, Doe v Roe,* 93 Misc 2d 201, 214), and that, in order to be considered wrongful, and thus actionable, the disclosure must be without legal justification or excuse *(MacDonald v Clinger, supra,* at 487). We observed that justification for disclosure, outweighing the physician's duty of confidentiality, might exist where there is a need to protect the safety of the patient or others *(see, Tarasoff v Regents of Univ. of Cal.,* 17 Cal 3d 425, 551 P2d 334) or where the patient has a sexually transmitted disease *(Simonsen v Swenson,* 104 Neb 224, 177 NW 831). In addition, the law is replete with justifications for disclosure which are deemed to outweigh the patient's right of confiden-

tiality. For example, a physician has a duty to report otherwise confidential information relating to contagion (Public Health Law §§ 2101, 2300 [5]); incidences of cancer (Public Health Law § 2401 [1]); child abuse (Social Services Law § 413); gunshot or stab wounds (Penal Law § 265.25 [a]); burns (Penal Law § 265.26 [a]); certain crimes (CPLR 4504 [b]); drug abuse (Public Health Law § 3372); and births and abortions (Public Health Law § 4100 [2] [g]; *State of New York v Jacobus,* 75 Misc 2d 840). Although the existence of reporting requirements imposed by statute or case law is not controlling on the issue before us, it is indicative of the need and appropriateness, in evaluating the scope of the physician/patient privilege and the physician's concomitant duty of nondisclosure, to balance the competing interests at stake *(see, MacDonald v Clinger, supra,* at 487-488; *see also, Doe v Roe, supra; Clark v Geraci,* 29 Misc 2d 791, 793; *Humphers v First Interstate Bank,* 298 Ore 706, 696 P2d 527, 535-536; *Hague v Williams,* 37 NJ 328, 181 A2d 345, 349).

At least one case suggests that the physician and his liability insurer possess valid legal or economic interests which justify disclosure of the patient's medical records where it is anticipated that the patient will institute a lawsuit against the doctor *(see, Hammonds v Aetna Cas. & Sur. Co.,* 243 F Supp 793, *on reconsideration of* 237 F Supp 96 [ND Ohio 1965]). The reasoning of the court in *Hammonds* is persuasive. In that case, an action against a medical malpractice insurer for wrongfully interfering with the physician/patient relationship and wrongfully inducing the doctor to disclose confidential medical records, the court stated:

"When is a doctor *legally free to discontinue treatment,* when may a doctor freely discuss with his lawyer the medical secrets of his patient, and when may an insurance company advise its assured to pursue either course? We think that the spirit of our earlier dictum is proper—an insurer may persuade a doctor to discontinue treatment only after the *claimant* knows or suspects that he is the victim of medical malpractice and has expressed an intent to pursue his legal rights. Only then is there a present danger to the insured's interest. This is perfectly illustrated by the facts as alleged in the instant case: because no claim was made against the doctor nor any lawsuit filed against the doctor, and the time provided by the statute of limitations has expired, there never was nor can there ever be an *immediate* danger that the defendant would undertake the risk involved in its policy. The danger of a lawsuit does not arise when a doctor suspects his

own misfeasance; the danger arises only when the patient so suspects. If there be no claimant, there can be no lawsuit, no claim, no danger to the defendant's economic interest. Therefore we hold that an insurance company may not induce, suggest or persuade a doctor to disrupt the treatment of his patient and to discuss the medical history of his patient unless and until there is a reasonable basis to believe that a claim for malpractice will be made against the doctor.

"The defendant argues that a doctor who suspects the advent of a malpractice claim must not be forced to wait, in mute suspension, the filing of a lawsuit against him or the notice of a claim against him. It is argued that this affords the plaintiff an unfair advantage to fully prepare his case while the doctor is proscribed against the first defensive measure. This is the first time that anyone has seriously argued that a plaintiff has any advantage in a malpractice case. We agree that to await the filing of a lawsuit is unnecessary; the doctor must only await the notice of a claim against him. Only when a patient expresses an intent to place in issue the doctor's conduct in the course of treatment does there arise an immediate threat to an insurer's economic interest; only at that point does there arise the privilege on the part of the insurance company to advise the doctor to breach his contractual obligations and to desist from further treatment." *(Hammonds v Aetna Cas. & Sur. Co.,* 243 F Supp 793, 804-805, *supra* [emphasis in original].)

We adopt the test established in *Hammonds:* an insurer may persuade a doctor to disclose certain medical secrets of the patient, and a doctor may share such information with the insurer, when the doctor has a reasonable belief that a claim for medical malpractice will be made against him by the patient. The doctor's belief is reasonable only if "the [patient] knows or suspects that he is the victim of medical malpractice and has expressed an intent to pursue his legal rights" by informing the doctor of his intention to make such claim or by performing some other affirmative act from which the doctor reasonably may infer such intention *(Hammonds v Aetna Cas. & Sur. Co., supra).* Indeed, Supreme Court seemed to adopt such test in this case when it stated, "At the very least, before such disclosure should be permitted, the physician should have a reasonable belief, based upon fact and not mere speculation, that the patient is going to sue him." *(Rea v Pardo,* 133 Misc 2d 516, 518, *supra.)*

Applying the test established in *Hammonds,* we conclude

that the doctor's anticipation of a suit against him was reasonable and was not, as Supreme Court found, based on mere speculation and conjecture. Although the issue of reasonableness may sometimes present a question of fact, we conclude that the doctor's actions here were reasonable as a matter of law. The patient retained a lawyer to investigate the claim and authorized release of his medical records to the lawyer. That was an affirmative act from which the doctor could infer that a claim for medical malpractice was being brought against him. Indeed, a medical malpractice action was commenced against Pardo soon after the lawyer received the medical records.

Since the doctor's expectation that a claim would be instituted against him was reasonable, he and his insurer were entitled to take reasonable measures to investigate and prepare to meet the anticipated claim. Although we do not attempt to delimit the permissible scope of defensive disclosure by a doctor in all circumstances, we hold that, where the case involves a precommencement authorization for disclosure of medical records to the patient's attorney, such authorization justifies the doctor's disclosure of those records to his attorney or carrier.

We emphasize that the carrier may not investigate the claim in such manner as to disclose confidential information to others. However, since it is not disputed in this case that there was no disclosure other than to the carrier, the actions of the doctor and the insurer were in all respects proper. Finally, although the issue of the doctor's conduct apart from disclosure is not before us, we do not condone the doctor's withholding of the records for several months instead of immediately forwarding them to the patient's lawyer in accordance with the medical authorization. The proper procedure would have been to forward the records to Moran immediately with copies to the carrier. Such procedure would assist in protecting the integrity of the records.

Accordingly, the order insofar as appealed from should be reversed and summary judgment should be granted to defendants dismissing the complaint in its entirety.

DOERR, J. P., BOOMER, LAWTON and DAVIS, JJ., concur.

Cross appeal dismissed as abandoned. Order insofar as appealed from unanimously reversed, on the law, without costs, and summary judgment granted defendants dismissing complaint in its entirety.