OPINION OF THE COURT
Bernard L. Reagan, J.
This action involves a New York doctor’s alleged improper disclosure of confidential HIV related (AIDS) information to an out-of-State Workers’ Compensation Board. Many various and sensitive issues of first impression have necessarily been decided by this court with respect to the patient’s rights and remedies under both the traditional physician-patient privilege encompassed in CPLR 4504 (a) and Public Health Law article 27-F.
a. facts:
For the purposes of the pending motions the following facts are not in dispute: Plaintiff, John Doe (an assumed name agreed upon by the parties), a 38-year-old male resident of Ohio, has been employed as a flight attendant with a commercial airline, since 1978. From 1987 to the present, plaintiff has been employed in this capacity and based out of the airline’s facilities in Pittsburgh, Pennsylvania. On or about February 6, 1987, plaintiff allegedly suffered or exacerbated certain sinus/ ear medical problems during the course of his employment. As a result, he filed a workers’ compensation claim with the State of Pennsylvania Bureau of Workers’ Compensation (claim No. *395 l).[1] In connection with this claim, plaintiff executed two medical authorizations on or about February 9 and 24, 1987. The authorizations were identical and provide that: "I hereby authorize the physician and/or hospital providing treatment to complete this Medical Report. I further authorize the physician and/or hospital providing treatment to release medical records to the above reference claim to representatives of [the airline] and to discuss the status of my injury with representatives of [the airline].”
On April 21, 1989, plaintiff consulted defendant, Dr. Jane Roe, M.D., P. C. (an assumed name agreed upon by the parties) at her office in Syracuse, New York. The purpose of this visit was for treatment of plaintiff’s ear and sinus problems. Plaintiff informed Dr. Roe that he was HIV positive and described his HIV medical history so "she could take proper precautions” for any intrusive body tests such as the drawing of his blood. Moreover, he related this information based on his belief that "it might be relevant to her treatment of (his) sinus and ear problems.” It is alleged that Dr. Roe specifically agreed to keep this HIV information confidential and not release it without a written authorization.
On May 14, 1989, shortly after plaintiff’s visit with Dr. Roe, his ear and sinus problems allegedly became aggravated during the course of his employment. He filed another claim (claim No. 3; see, n 1) concerning this "injury” with the Pennsylvania Board of Workers’ Compensation on October 5, 1989. On March 5, 1990, the Pennsylvania Workers’ Compensation Referee signed a subpoena which directed Dr. Roe to appear at an April 2, 1990 hearing in Pittsburgh and to bring with her "all medical reports or records of any kind whatsoever relating to your treatment of [John Doe]”.
On March 13, 1990, a Pennsylvania attorney acting on behalf of the airline in the compensation proceeding, sent the Referee’s subpoena and the medical authorizations signed by plaintiff in claim No. 1 to Dr. Roe. In response to the subpoena, Dr. Roe forwarded a copy of plaintiff’s entire chart and *396 file on March 19, 1990. Plaintiffs file contained, inter alla, information that he had tested HIV positive.[2]
B. THE COMPLAINT:
Plaintiff’s complaint asserts five causes of action against the defendant and her corporation: (1) negligence per se; (2) breach of confidentiality; (3) breach of oral contract; (4) breach of implied contract; and (5) invasion of privacy. All of these causes of action are alleged to have been incurred as a result of defendant’s "knowing, deliberate and intentional” conduct. With respect to damages, plaintiff seeks: (a) $10,000 special damages; (b) general damages for pain and suffering (and) loss of wages; and (c) $50,000 in punitive damages.
c. plaintiff’s motion:
In response to the complaint, defendant has asserted 10 "affirmative defenses” which plaintiff seeks to dismiss for the reasons stated below. At this juncture it is appropriate to preliminarily note that while the complaint involves many sensitive issues and intricate points of law, it does not allege or attempt to allege a cause of action for medical malpractice against defendants. Accordingly, to the extent defendants seek summary judgment dismissing the complaint on the issues of wrongful statement of damages or for lack of a medical certificate under CPLR 3012-a and 3017 (c), such an application is without merit, is denied and plaintiff’s application to dismiss affirmative defenses relating to medical malpractice is granted. (Cf., Tighe v Ginsberg, 146 AD2d 268.)
(1) Failure to State a Cause of Action
Plaintiff has characterized his action as one for a breach of fiduciary duty not to disclose confidential information and for breach of an oral contract, notwithstanding his separately pleaded five causes of action. In written questions propounded by the court, it was asked whether all causes of action were subsumed by a single cause of action for the breach of the fiduciary duty of nondisclosure (see, Tighe v Ginsberg, supra). In response, plaintiff has now conceded that, in the circum *397 stances of this case, four of his claims coalesce into one action for breach of fiduciary duty, i.e., negligence per se (cause 1); breach of confidentiality (cause 2); breach of implied contract (cause 4); and invasion of privacy (cause 5). Accordingly, causes of action Nos. 1, 4 and 5 are dismissed.
(a) Breach of Fiduciary and Statutory Duty
With respect to the claim of breach of fiduciary duty, plaintiff notes that this claim is framed not only upon the traditional grounds of the physician-patient relationship and privilege of CPLR 4504 (a) as recognized in Tighe (supra) and MacDonald v Clinger (84 AD2d 482), but also on the independent special duties imposed upon physicians by statute in Public Health Law article 27-F with respect to disclosure of HIV related information concerning their patients. While a separate cause of action is not pleaded for violation of Public Health Law article 27-F, it is clear that cause of action No. 2 is, in reality, two causes of action: (1) for breach of the physician-patient fiduciary duty of confidentiality recognized in CPLR 4504 (a); and (2) for breach of the statutory duties imposed upon physicians with regard to disclosure of confidential HIV related information under Public Health Law article 27-F. Plaintiff has made out a prima facie case for breach of a fiduciary or statutory duty under either theory espoused above. The motion to dismiss cause of action No, 2 for failure to state a cause of action is denied.
(b) Breach of Oral Contract — Consideration—Duty of HIV Infected Patient to Disclose Disease to Doctor
Plaintiff contends, however, that his claim for breach of an oral contract (cause No. 3) is not subsumed by either the breach of a statutory or fiduciary duty, but relies instead upon Dr. Roe’s alleged independent, oral promise not to reveal plaintiff’s HIV related information. In this regard, plaintiff notes that Tighe (supra) did not deal with an independent oral doctor-patient "contract” not to disclose confidential information. However, the Court in Tighe (supra, 146 AD2d, at 271) emphasized that the gravamen of plaintiff’s complaint in these matters is not malpractice or, as here, one of contract, but rather concerns a doctor’s alleged failure to fulfill a duty not to disclose confidential information. Indeed, as a practical matter, plaintiff concedes that if a cause of action for breach of a fiduciary or statutory duty is upheld, there is little reason for him to attempt to prove the alleged oral contract. This is a *398 practical decision because plaintiff would be limited to strictly economic loss on a mere "contract” claim (see, Tighe v Ginsberg, supra, at 271).
The court especially notes that plaintiff claims his "consideration” for this alleged independent contract with defendant to maintain confidentiality was his disclosure to defendant that he was HIV positive so that defendant and her office personnel could take necessary precautions to prevent their own infection with this deadly disease. Plaintiff concedes a moral duty to inform Dr. Roe, but contends he had no legal duty to disclose his HIV status to Dr. Roe, when it became apparent the physical testing might become bodily intrusive, e.g., by the drawing of his blood. This court disagrees.
In Matter of New York State Socy. of Surgeons v Axelrod (77 NY2d 677), the Court, in the limited review of a CPLR article 78 proceeding, held that the State Department of Health’s (DOH) determination that AIDS need not be added to the list of communicable and sexually transmissible disease was a rational determination. This decision was based upon the policy enunciated in Public Health Law article 27-F to promote voluntary testing for HIV infections and the recognition that, were AIDS added to DOH’s lists as a "communicable or sexually transmitted” disease, certain mandatory reporting, testing, quarantine and contact tracing would ensue. The Court did not address the issue of whether or not defendant had a legal duty to disclose a known infection to the health care provider. That AIDS, in reality, is communicable and may also be sexually transmitted is and was not disputed (see, Matter of Doe v Coughlin, 71 NY2d 48, 57, 60). The Court merely upheld the DOH’s determination as rational, being one of policy only with respect to DOH’s categorization of the disease and the effect thereon upon the willingness of patients to undergo voluntary testing.
Moreover, contrary to plaintiff’s position, 10 NYCRR 63.5 (j) does not negate or obviate any legal duty of one who is knowingly HIV illness-related to disclose such infection to his own doctor (see, Public Health Law § 2780 [13]) prior to treatment. This regulation mandates in part that "Confidential HIV-related information shall not be disclosed to a health care provider * * * for the sole purpose of implementing infection control precautions” (10 NYCRR 63.5 [j] [emphasis added]). However, the phrase "Confidential HIV-related information” is further defined as: "any information, in the possession of a person who provides health or social services or who *399 obtains the information pursuant to a release of confidential HIV-related information, concerning whether an individual has been the subject of an HIV-related test, or has HIV infection, HIV-related illness or AIDS, or information which identifies or reasonably could identify an individual as having one or more of such conditions, including information pertaining to such individual’s contacts” (10 NYCRR 63.1 [g]; see also, Public Health Law § 2780 [7] [emphasis added]).
The regulation contained in 10 NYCRR 63.5 (j), however illogically and without regard to health consequences, merely makes it clear only that its prohibition would prevent, e.g., a doctor from passing on his or her knowledge of positive HIV related information provided to him or her to another health care provider or health care facility. It does not negate any legal duty on a patient’s behalf to disclose a known HIV infection to the treating doctor.
Whether or not a duty exists to disclose one’s known HIV status to a treating physician depends on whether the treating doctor’s interests are entitled to legal protection against the infected person’s conduct (cf, Pulka v Edelman, 40 NY2d 781, 782) and is entirely one of law to be determined by the courts (see, Donohue v Copiague Union Free School Dist, 64 AD2d 29, 33). Public Health Law article 27-F provides many positive benefits to sufferers of this unfortunately fatal affliction, but it does not provide a shield to insulate a person who is knowingly HIV infected from negligently or fraudulently transmitting this disease. More than just a moral duty arises in a situation such as this (cf, Maharam v Maharam, 123 AD2d 165 [negligent and fraudulent transmission of herpes — duty to speak]; Petri v Bank of N. Y. Co., 153 Misc 2d 426 [AIDS; fraud or negligence in "special relationship”; duty to use reasonable care not to transmit a "sentence of death”]; People v Durham, 146 Misc 2d 913, 916 [crime victim has right to know of exposure to AIDS]; People v Thomas, 139 Misc 2d 1072, 1075 [same]; Doe v Roe, 218 Cal App 3d 1538, 267 Cal Rptr 564 [1st Dist] [herpes]; compare, McBarnette v Feldman, 153 Misc 2d 627 [inadequacy of Public Health Law and State in its responsibilities and duty to protect health and safety of public with respect to HIV infected health care workers]).
Whether one so infected is engaged in sexual activity or, as here, assents to bodily intrusive physical examinations, an equal risk exists of transmitting this deadly, communicable disease to an unknowing health care provider who may then unwittingly transmit to others (cf., Matter of Doe v Coughlin, *400 supra; see generally, Note, Standards of Conduct, Multiple Defendants, and Full Recovery of Damages in Tort Liability for the Transmission of Human Immunodeficiency Virus, 18 Hofstra L Rev 37 [1989]). Such a legal duty arises out of not only moral and ethical considerations, but out of logic, common sense and medical evidence as well, with regard to the general health of society and its physician caretakers. To hold otherwise would be to improvidently elevate policy and the political aspects of this fatal disease over the medically proven health dangers of exposure to HIV infected blood, semen, saliva, etc., and to demonstrated risks of transmission to unknowing and unprepared recipients.
Having determined that plaintiff, having knowledge of his positive HIV status, was under a legal duty to inform Dr. Roe of that status prior to her treatment, there was no independent legal consideration on plaintiffs behalf for Dr. Roe’s promise ("oral contract”) not to disclose other than that already assumed in the fiduciary relationship of the parties. A promise to perform or performance of a preexisting legal obligation is not valid consideration to provide a basis for a contract (see, Goncalves v Regent Intl. Hotels, 58 NY2d 206). Under these circumstances, the motion by defendant to dismiss cause of action No. 3 for failure to state a cause of action is granted.
(2) Plaintiff’s Motion for Summary Judgment
In addressing this motion in regards to the remaining cause(s) of action for breach of a fiduciary and statutory duty, the court must necessarily consider defendant’s remaining affirmative defenses.
(a) New York State Law is Applicable to this Action
Defendant contends that, inasmuch as this action initially arose out of a workers’ compensation claim and subpoena filed and issued in the State of Pennsylvania, Pennsylvania law should control. In this regard, defendant claims this matter involves a dispute between plaintiff and the State of Pennsylvania as to whether or not plaintiffs preexisting HIV positive status is relevant to his compensation claims. Accordingly, defendant contends that Pennsylvania has the substantial interest in this case. Moreover, defendant contends that, inasmuch as plaintiff is a nonresident of the State of New York, Public Health Law article 27-F does not protect his interests.
Defendant misperceives both the nature of plaintiffs cause *401 of action and the interest of New York State in the issues raised. Concededly, New York State does not have an interest in the workers’ compensation claim filed in the State of Pennsylvania. However, the actionable wrongs complained of by plaintiff are the breach of fiduciary duty of confidentiality based upon the alleged violation of the physician-patient privilege under CPLR 4504 (a) and the special duty of confidentiality imposed under Public Health Law article 27-F. These statutes clearly reflect the public policy of the State of New York in regard to the confidentiality of information gained in a physician-patient relationship (cf., MacDonald v Clinger, 84 AD2d 482, 484, supra) and especially in regards to HIV related information, where confidentiality protection for HIV information is legislatively described as an essential public health measure (cf., L 1988, ch 584, § 1).
The physician-patient relationship between the parties was entered into in the State of New York and the alleged improper disclosure of confidential HIV related information occurred in the State of New York. It is clear that the State of New York has the greater interest in this litigation with respect to the issues raised and law to be applied. (See, Matter of Istym Inc. v Chemical Bank, 78 NY2d 342, 347.) In this regard, at the time of the alleged improper disclosure of HIV related information, Public Health Law article 27-F was in effect in this State (L 1988, ch 584, eff Feb. 1, 1989), and applies to both residents and nonresidents such as plaintiff as "protected individual(s)” who are either the subject of an HIV related test or who have been diagnosed as having HIV infection (see, Public Health Law § 2780 [6]; 10 NYCRR 63.1 [Q). Accordingly, defendant’s seventh "aflirmative defense” is dismissed.
(b) Claim of Consent by Plaintiff to Release Medical Records and Defendant’s Legal Authority to Release HIV Related Information
The subpoena served on Dr. Roe was accompanied by copies of general medical authorizations executed by plaintiff for an earlier compensation claim (No. 1) made by plaintiff in February 1987. Accordingly, defendant contends that her actions were justified as a matter of law in that these authorizations were legally sufficient to justify the release under Public Health Law article 27-F and also on the grounds that she was justified in complying with the judicial mandate of the subpoena. In considering whether the Pennsylvania workers’ *402 compensation request for plaintiffs medical records should have been honored, it is necessary to examine plaintiffs rights under both CPLR 4504 (a) and Public Health Law article 27-F.
(i) Breach of Privilege Contained in CPLR 4504 (a)
Generally, a waiver of the physician-patient privilege provided by CPLR 4504 (a) may be accomplished by either the patient’s express consent, or indirectly by the commencement of a personal injury action which affirmatively places one’s physical or mental condition in controversy (Prink v Rockefeller Ctr., 48 NY2d 309, 316). In this regard, the filing of a workers’ compensation claim has been held sufficient to constitute a waiver of the protection of CPLR 4504 (a) (see, Matter of Trotta v Ward Baking Co., 21 AD2d 701; Matter of Maryland Cas. Co., 274 App Div 211, 214; cf., Koump v Smith, 25 NY2d 287; Matter of Beeler v Hildan Crown Container Corp., 26 AD2d 163).
There is an important distinction, however, in having this court determine, with hindsight, that plaintiff waived his CPLR 4504 (a) privilege by bringing the compensation claim and the duty, if any, of Dr. Roe to have responded to the request for plaintiffs medical records at the time of the release of information. A doctor such as Dr. Roe, receiving a request for a patient’s medical records is bound by the provisions of CPLR 4504 (a), and unless a patient waives the privilege, the doctor "shall not be allowed to disclose any information” (see also, 42 Pa Stat § 5929). Thus, normally, service of a bare subpoena is insufficient to obtain privileged medical records due to the CPLR 4504 (a) privilege (see also, CPLR 3102 [b]) without a patient’s waiver, or unless the disclosure is subject to certain specific legislatively created exceptions to the privilege (see, Matter of Grand Jury Investigation, 59 NY2d 130; Rea v Pardo, 132 AD2d 442, 445-446). One of these exceptions to CPLR 4504 (a) disclosure is provided in the broad powers granted in New York State to the Workers’ Compensation Board and its Hearing Officers to supervise its proceedings and to subpoena relevant documents and witnesses (see, Workers’ Compensation Law § 118).
Either the Compensation Board, a Referee or attorneys representing the claimant or other party may issue a subpoena or subpoena duces tecum to compel the attendance of witnesses and for the production of "papers, documents and other evidence” (see, Workers’ Compensation Law §§ 119, 142 *403 [3] [a]).[3] If, however, a subpoena is issued by the Compensation Board or other authorized persons, it is to be regulated by the CPLR (see, Workers’ Compensation Law § 119). Had this subpoena been issued by a New York Compensation Board, and only non-HIV related information contained in Dr. Roe’s records, the proper procedure was for her to either comply with the subpoena or, if were objected to, to move to quash under CPLR 2304. Thereafter plaintiffs employer, the airline, might inspect the medical records and same be received in evidence only if the Board or Referee would rule that the records were relevant to the claim and that the physician-patient privilege was therefore not applicable (see, Matter of Maryland Cas. Co., 274 App Div 211, supra). Thus, with respect to the privilege contained in CPLR 4504 (a), Dr. Roe need not have further questioned the subpoena and risk possible judicial sanctions for nondisclosure (see, CPLR 2308; 77 Pa Stat § 992).[4]
With respect to the issue of the extra-State service of the Pennsylvania subpoena in New York, neither State recognizes the legal validity of a subpoena served by a foreign jurisdiction (see, Coombs v Rowand, 39 AD2d 532, appeal dismissed 31 NY2d 853; Wallace v United Elec. Co., 211 Pa 473, 60 A 1046). In this regard, plaintiff contends in essence that, given the legal nonvalidity of the out-of-State subpoena, Dr. Roe violated her fiduciary duty of nondisclosure under CPLR 4504 (a) by complying with the subpoena. While such an issue may have validity with respect to disclosure under Public Health Law article 27-F, the same may not be said for the CPLR 4504 (a) claim. Having received a workers’ compensation subpoena, which was presumptively valid unless and until successfully challenged, Dr. Roe’s duty was to comply, leaving the issue of relevance, privilege and validity of the subpoena to the Compensation Board (see, Workers’ Compensation Law § 142 [1]; Matter of Maryland Cas. Co., supra) or to a court on a motion *404 to quash on grounds of privilege, or jurisdiction (see, Workers’ Compensation Law § 119; CPLR 2304).
Accordingly, in the facts and circumstances of this case, to the extent that plaintiff’s cause of action No. 2 is based upon defendant’s alleged breach of a fiduciary duty of confidentiality of non-HIV related information under CPLR 4504 (a), summary judgment is granted defendant, dismissing such a claim as a matter of law, as plaintiff waived his CPLR 4504 (a) privilege by bringing the workers’ compensation claim. (See also, infra, as to waiver by medical authorizations.) In any event, the true nature of plaintiff’s claim hinges upon alleged improper disclosure of confidential HIV related information statutorily protected by Public Health Law article 27-F.
(ii) Breach of Statutory Duty — Public Health Law Article 27-F — Required Authorizations
The above discussion regarding CPLR 4504 (a) keys upon the law dealing with the power and presumptive validity of a subpoena issued by a Workers’ Compensation Board with respect to disclosure of confidential medical records. Issues concerning plaintiff’s purported medical authorizations were not necessarily determined because release under the subpoena was found sufficient, inasmuch as plaintiff had waived his claim of confidentiality under CPLR 4504 (a) by commencing the compensation proceeding. Different legal issues and policy concerns must be considered where, as here, a patient’s medical records contain confidential HIV related material (see, Public Health Law § 2780 [7]; 10 NYCRR 63.1 [g]). This is so because of Public Health Law § 2782 (1) which provides, in part that, "fn]o person who obtains confidential HIV related information in the course of providing any health * * * service or pursuant to a release of confidential HIV related information may disclose or be compelled to disclose such information” (emphasis added) except to certain persons, governmental agencies or private entities further specified in Public Health Law § 2782. Thus the ability of workers’ compensation authorities to independently obtain medical records under Workers’ Compensation Law § 119 is expressly limited by Public Health Law § 2782 (1). Moreover, a Compensation Board may not even obtain such information unless it qualifies as a specified recipient under Public Health Law § 2782.
*405 (aa) The Workers’ Compensation System is an "Insurance Institution” Qualified to Receive Confidential HIV Related Information under Public Health Law § 2782
Under Public Health Law § 2782 (1) (j), release of confidential HIV related information is authorized, inter alla, to an "insurance institution”. An "insurance institution” is further defined in Public Health Law § 2780 (16) as follows: " 'Insurance institution’ means any corporation, association, partnership, reciprocal exchange, interinsurer, fraternal benefits society, agent, broker or other entity including, but not limited to, any health maintenance organization, medical service plan, or hospital plan which: (a) is engaged in the business of insurance” (emphasis added).
Plaintiff initially contends that while the workers’ compensation system would appear to be "engaged in the business of insurance” within the definition of an "insurance institution” in Public Health Law § 2780 (16) (a), it is in reality only a type of liability imposed on employers as a matter of law and concerns merely the administrative apparatus set up to enforce that liability. Moreover, plaintiff contends the definition of "insurance institution” should be restricted to New York State entities only, and not include the Pennsylvania compensation system. With respect to the later contention, Public Health Law article 27-F, specifically Public Health Law § 2780 (16), provides no limitation allowing disclosure only to New York State entities. So long as the entity, be it a person, government agency or private entity, qualifies as a recipient of the type listed in Public Health Law § 2782, disclosure is allowed subject to other specified conditions.
New York Insurance Law § 1113 (a) (15) defines workers’ compensation as employer liability insurance (cf, 40 Pa Stat § 111). Moreover, Workers’ Compensation Law § 2 (12) defines "insurance carrier” as including the New York State Insurance Fund (see, Workers’ Compensation Law § 76), which provides a method for insurance coverage to any employer in the State seeking to provide statutory compensation coverage. While the State Insurance Fund is a State agency (see, Methodist Hosp. v State Ins. Fund, 64 NY2d 365, appeal dismissed 474 US 801), its functions are akin to that of a private insurance company (see, Minkowitz, Practice Commentaries, McKinney’s Cons Laws of NY, Book 64, Workers’ Compensa *406 tian Law § 76, 1992 Pocket Part, at 46-47). The State of Pennsylvania has its own State Workers’ Insurance Fund which is also an "insurer” under that State’s laws (see, 77 Pa Stat §§ 701,1051-1060).
Accordingly, given the broad powers of the Compensation Board to administer, hear and determine workers’ claims and to then provide compensation if merited (see generally, Workers’ Compensation Law § 142; 77 Pa Stat § 751) and, given the exclusivity of the remedy concerning a worker’s claims against his employer (see, O’Rourke v Long, 41 NY2d 219), this court holds that the workers’ compensation system is an "insurance institution”, under Public Health Law § 2780 (16).
(bb) Disclosure Pursuant to a Workers’ Compensation Request is Governed by Public Health Law §§ 2874 and 2782 (1) (j)
Having determined that the workers’ compensation system is an "insurance institution” for purposes of Public Health Law § 2780 (16), none of the provisions of Public Health Law article 27-F apply to workers’ compensation with respect to the confidentiality and disclosure of confidential HIV related information except Public Health Law § 2782 (1) (j) (see, Public Health Law § 2874; see also, 10 NYCRR 63.2, 63.5 [a] [9], [10], [12]). Under Public Health Law § 2782 (1) (j). a person, such as Dr. Roe, who obtains HIV related information may not disclose or be compelled to disclose that information except to: "(j) an insurance institution, for other than the purpose set forth in paragraph (i) of this subdivision, provided the insurance institution secures a dated and written authorization that indicates that health care providers, health facilities, insurance institutions, and other persons are authorized to disclose information about the protected individual, the nature of the information to be disclosed, the purposes for which the information is to be disclosed and which is signed by: (1) the protected individual” (emphasis added; see also, 10 NYCRR 63.5 [a] [10]).
Thus, if accompanied by the required written authorizations, service of a subpoena for such information would be valid.
(cc) Lack of Sufficiency of the Medical Authorizations for HIV Related Information
The "medical authorizations” given to Dr. Roe by the Penn *407 sylvania Workers’ Compensation Board were not sufficient in- and-of themselves, to constitute a waiver authorizing release of plaintiff’s "confidential HIV related information” under Public Health Law §2782 (1) (j). Plaintiff’s general medical authorizations executed in February 1987 would have served as an independent basis (in addition to the filing of the compensation claim) to constitute a waiver authorizing Dr. Roe to release records of non-confidential HIV related information in 1990. (See, People v Abdul Karim Al-Kanani, 33 NY2d 260, cert denied 417 US 916.) However, since Dr. Roe’s medical records did contain confidential HIV related information, plaintiff contends that the 1987 authorizations were insufficient with respect to the requirements of Public Health Law § 2872 (1) (j). This court agrees.
The 1987 authorizations facially comport with Public Health Law § 2872 (1) (j) in that they are in writing, dated, signed by plaintiff, refer to medical records and indicate the compensation claim nature and purpose of the release. However, Public Health Law § 2872 (1), inter alla, refers to, the "release of confidential HIV related information” which is further defined in Public Health Law § 2780 (9) as follows: " 'Release of confidential HIV related information’ * * * A general authorization for the release of medical or other information shall not be construed as a release of confidential HIV related information, unless such authorization specifically indicates its dual purpose as a general authorization and an authorization for the release of confidential HIV related information and complies with the requirements of this subdivision” (emphasis added).
Clearly, the February 1987 authorizations do not contain any clause reflecting the time period during which the release is to be effective, nor do they specify that they may also serve as authorizations for the release of confidential HIV related information. Accordingly, this court holds as a matter of law, that the 1987 "releases” were merely general authorizations which did not constitute a waiver of his Public Health Law article 27-F statutory right to nondisclosure of confidential HIV related information. Plaintiff’s motion to dismiss defendant’s sixth affirmative defense (authorization) is granted.
(c) Judicial Immunity — Reasonableness of Defendant’s Actions
Defendant contends that by responding to the Pennsylvania Workers’ Compensation Board subpoena and releasing plain *408 tiffs medical records, she is cloaked with "judicial immunity” with regard to her actions in releasing confidential HIV related information. In this regard, to the extent that defendant relies upon Public Health Law § 2782 (1) (k), her reliance is misplaced. Public Health Law § 2782 (1) (k) allows release of confidential HIV related information when disclosure is ordered by a court of competent jurisdiction pursuant to Public Health Law § 2785. Public Health Law § 2785 allows a "court of record of competent jurisdiction” to order such disclosure upon application pursuant to certain special grounds contained in Public Health Law § 2785 (2). First, no such application for a court order was made by the Pennsylvania Workers’ Compensation Board. Second, the Workers’ Compensation Board is not a "court of record of competent jurisdiction” (see, Judiciary Law §2), authorized to issue a court order under Public Health Law § 2785.
However, in asserting her alleged "judicial immunity”, defendant makes an equitable argument by contending that the issuance of the subpoena served on Dr. Roe, provided her with the appearance of authorized disclosure upon which she justifiably relied. The implication of this argument is that Dr. Roe’s actions were reasonable in these circumstances and, as such, she cannot be said to have breached the fiduciary duty of confidentiality as a matter of law.
In this regard, it has been held that the right of physician-patient confidentiality is not absolute and in order for such disclosure to be considered wrongful, it must be without legal justification or excuse (see, MacDonald v Clinger, 84 AD2d 482, 487, supra; cf., Rea v Pardo, 132 AD2d 442, 445, supra ["reasonable belief’ of recipient of subpoena]). In evaluating the scope of physician-patient relationship and the duty of nondisclosure, the competing interest at stake must be balanced (see, Rea v Pardo, supra, at 446). However, the Rea Court did "not attempt to delimit the permissible scope of defensive disclosure by a doctor in all circumstances” (supra, at 448 [emphasis added]).
In this matter, Dr. Roe was given a presumptively valid subpoena by the Pennsylvania Workers’ Compensation Board, and subjected to a belief of at least possible legal sanctions, for disobedience thereof. These records were to be utilized by the Compensation Board only to investigate, evaluate and determine plaintiff’s own pending claims (cf, Rea v Pardo, supra, at 445). This court would consider such a "defensive disclosure” defense certainly viable on any mere claim for a disclosure *409 violation of the privilege contained in CPLR 4504 (a). However, having previously determined that plaintiff has no cause of action for breach of fiduciary duty of confidentiality solely under CPLR 4504 (a), the question becomes whether such a “defense” is applicable to a claim under Public Health Law article 27-F.
I find and hold, as a matter of law, that the receipt of the subpoena by Dr. Roe does not justify any form of “defensive disclosure” by a physician of confidential HIV related information. Dr. Roe and the Workers’ Compensation Board, as an "insurance institution”, are subject to the requirements of Public Health Law § 2782 (1) (j) and § 2780 (9) which mandate that the disclosure of confidential HIV related information be accompanied by a specific release or authorization, which, in this case has been found to be inadequate. No exception is made by statute for the disclosure or release upon subpoena of such information, whether that subpoena is authorized or not. In this regard, in enacting Public Health Law article 27-F the Legislature indicated that “[i]t is the intent of the legislature that exceptions to the general rule of confidentiality of HIV related information be strictly construed.” (L 1988, ch 584, § 1; see, Doe v State of New York, 152 Misc 2d 922, 923.)
Accordingly, plaintiff’s motion to dismiss defendant’s eighth affirmative defense (judicial immunity) is granted.
(d) A Private Cause of Action May be Maintained under Public Health Law Article 27-F — Compensatory Damages are not Limited
Defendant contends that no private cause of action may be maintained under Public Health Law article 27-F because the statute provides for a specific civil penalty of $5,000 and/or criminal misdemeanor prosecution for unauthorized disclosure (see, Public Health Law § 2783 [1], [2]). In this regard, defendant relies upon the decision in Sheehy v Big Flats Community Day (73 NY2d 629). Utilizing the Sheehy analysis, at least one New York State court has recognized a private right of action exists under Public Health Law article 27-F (see, Matter of V. v State of New York, 150 Misc 2d 156; cited with approval in Nolley v County of Erie, 776 F Supp 715 [WD NY 1991]). Further, a private right to an action for civil damages is expressly recognized in Public Health Law § 2783 (3) where it provides a defense to a “cause of action for civil damages” for, inter alla, a physician who discloses confidential HIV related information “in good faith and without malice, and in *410 compliance with the provision of this article” (emphasis added) (see also, Public Health Law § 2783 [4]). Finally, the amount of civil damages recoverable in an action under this law is not limited by the civil penalties provision of Public Health Law § 2783 (1) (b) inasmuch as that provision refers to civil penalties recoverable by the Commissioner of Health. (See, Public Health Law § 12 [2]; § 12-b.) Accordingly, defendant’s motion to dismiss on the grounds that no private right of action exists under Public Health Law article 27-F is denied.
(3) Motion by Plaintiff for Partial Summary Judgment on the Issue of Liability
The essence of plaintiff’s remaining complaint is for damages based upon the breach of statutory protections provided for wrongful disclosure of confidential HIV related information under Public Health Law article 27-F. With respect to the latter cause of action there remain no issues of fact, inasmuch as the court has found as a matter of law that release of confidential HIV related information may not be disclosed pursuant to subpoena only and the purported medical authorizations do not, as a matter of law and fact, comport and comply with the requirement of Public Health Law article 27-F. Moreover, for the reasons stated above, the court has granted plaintiff’s motion for summary judgment dismissing all of defendant’s affirmative defenses with respect to this remaining claim. There remaining no issue of fact with respect to the cause for defendant’s violation of Public Health Law article 27-F, summary judgment is granted to plaintiff on the issue of liability only. The issue of damages is reserved for trial.
(4) Motion for Protective Order
On March 13, 1992, after this action was commenced, defendant served discovery requests upon plaintiff seeking, inter alla, plaintiff’s executed medical authorizations so as to allow defendant to obtain all of plaintiff’s doctor’s reports, hospital records and X-rays. Moreover, defendant seeks plaintiff’s complete workers’ compensation file. These requested authorizations were to also include language authorizing specific release of "AIDS” related information. Defendant also seeks all existing and future reports of physicians who have examined plaintiff in connection with injuries and conditions for which *411 plaintiff seeks to recover in this action. Plaintiff has moved for a protective order striking these requests, alleging that the requests are overbroad as to time of treatment limitations and that defendant has failed to demonstrate a "compelling need” for HIV related information under Public Health Law § 2785 (2).
Defendant contends that plaintiff has waived his physician-patient privilege by commencing this action, and that the HIV related information is relevant to the nature of the damages claimed in this action as is the nature of the workers’ compensation claims. In this regard, plaintiff has alleged damages related to defendant’s wrongful disclosure consisting of "pain and suffering” and "lost earnings”. Plaintiff’s pain and suffering is generally alleged to be "substantial emotional distress, mental anguish * * * depression * * * (and) anxiety”. His lost earnings are said to arise from defendant’s disclosure of his HIV status resulting in "psychic trauma” which has harmed his ability to compete in the job market and to have effectively pursued his compensation claims.
Plaintiff contends, however, that information concerning his physical condition, as opposed to his mental condition, in relation to his HIV illness should not be discoverable. This court disagrees. While the Legislature has provided special protections in Public Health Law article 27-F for disclosure of confidential HIV related information, it has not created the status of a "super-plaintiff”, one completely insulated from defensive examination into his physical/mental condition and all relevant, attendant circumstances which have been affirmatively placed in controversy.
In considering plaintiff’s application for a protective order, the court must necessarily determine whether defendant would be entitled to a court order authorizing disclosure of confidential HIV related information. This procedure is set forth in Public Health Law § 2785. The "liberal” discovery provisions of CPLR article 31 are not controlling inasmuch as "[notwithstanding any other provision of law” Public Health Law § 2785 is to govern (see, Public Health Law § 2785 [1]). The standard rule of discovery is governed only by a test for materiality of usefulness and reason (see, Hoenig v Westphal, 52 NY2d 605, 608; Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406). However, the test, for purposes of this claim, is whether or not defendant has shown a "compelling need for disclosure of the information for the adjudication of * * * [this] civil proceeding” (see, Public Health Law § 2785 [2] [a]).
*412 In the circumstances of this case, the court finds that defendant has demonstrated the required "compelling need” for disclosure of certain confidential HIV related information. In this regard, having affirmatively pleaded damages including pain and suffering and lost earnings relative to the wrongful disclosure, it remains for plaintiff to prove both causation and proximate cause. Determination of plaintiff’s pecuniary injury necessarily involves both plaintiff’s mental and HIV related physical history (cf., Prink v Rockefeller Ctr., 48 NY2d 309, 317, supra; Mancinelli v Texas E. Transmission Corp., 34 AD2d 535). It would seem that one knowingly suffering from a potentially and probable fatal HIV related illness might certainly be said to have a certain amount of preexisting mental distress unrelated to the instant claim. Further, it would seem obvious that plaintiff’s physical illness and the degree of its stage of advancement may manifest itself by other physical and mental side-effects. One prosecuting a claim such as this may not use his illness as both sword and shield (cf, Capron v Douglass, 193 NY 11, 17).
Accordingly, plaintiff’s motion for a protective order is denied and plaintiff is ordered to furnish the requested medical authorizations, including language authorizing release of HIV related information to defendant within 30 days of service on plaintiff or his attorney of a copy of this order with notice of entry. These releases shall authorize disclosure for medical and hospital records from January 1, 1987 (a date immediately prior to defendant’s first workers’ compensation claim and HIV testing) to the present. However, these authorizations shall direct that any and all such records on file be forwarded to this court for in camera review. Consideration as to further releases and the extent thereof is reserved pending examination of these records (cf., Public Health Law § 2785 [6]).

. Plaintiff filed a second workers’ compensation claim on November 5, 1987 for sinus/middle ear problems (claim No. 2). Hearings were held on claims No. 1 and No. 2 on May 16, 1988 and December 19, 1988, which resulted in a determination of April 10, 1989, which granted three weeks’ compensation for claim No. 1 and denied claim No. 2. The denial of claim No. 2 was affirmed on August 7,1990.

. On March 17, 1987 and January 1, 1988, plaintiff tested positive for HTV (human immunodeficiency virus) infection which has been identified as a probable causative agent of the disease AIDS (acquired immune deficiency syndrome) (see, Public Health Law § 2780 [1], [2]).

. Workers’ compensation proceedings are not "actions” within the immediate purview of discovery statutes under the CPLR (see, Matter of Spiotta v Liberty Mut. Ins. Co., 120 Misc 2d 641).

. Inasmuch as this subpoena was issued pursuant to the Workers’ Compensation Law, it was not "third-party” discovery governed by CPLR 3120 (b) for which notice must be given (cf., Matter of Spiotta v Liberty Mut. Ins. Co., supra; compare cases regarding notice for discovery of privileged matter from nonparties, Pacer v Clarence A. Hackett, Inc., 30 AD2d 934; Matter of Deloitte, Haskins & Sells, 146 Misc 2d 884; Pavia v 810 Broadway Assocs., 130 Misc 2d 1054).