■ In the Matter of NORTH SHORE UNIVERSITY HOSPITAL, Petitioner, v MARGARITA ROSA, as Commissioner of the New York State Division of Human Rights, Respondent. [600 NYS2d 90] —Proceeding pursuant to Executive Law § 298 to review a determination of the respondent Commissioner of the New York State Division of Human Rights dated August 17, 1990, which, after a hearing, found that the petitioner had discriminated against the complainant and awarded him the sum of $25,000 as compensatory damages for mental anguish and humiliation.

Adjudged that the petition is granted, on the law, the determination is annulled, and the complaint is dismissed, with costs to North Shore University Hospital, payable by the Commissioner of the New York State Division of Human Rights, to be assessed by the County Clerk, Nassau County, under CPLR 8203 and 8301.

The complainant visited the petitioner's dental clinic on three occasions in 1985. On October 30, 1985, he was treated without incident. When he appeared for follow-up treatment on November 15, 1985, he was questioned about his sexual orientation, and about other subjects as well, in order to determine whether he might present a higher than normal

risk of infection with the HIV virus. At this point, the complainant became upset and left the clinic. However, he returned for a third visit on November 22, 1985, and was again given the appropriate treatment in accordance with the clinic's infectious disease protocol.

In 1985, the infectious disease protocol in effect at the dental clinic operated by the petitioner called for the treatment of certain patients with what were defined as "strict isolation techniques". The patients whose treatment was governed by this protocol included persons who tested positive for the HTLV-III antibody, hepatitis B, intravenous drug abusers, patients who had received multiple blood transfusions, hemodialysis patients, persons suffering from mononucleosis or tuberculosis, homosexually active men, and prostitutes.

As noted above, on his third visit to the clinic, the complainant was treated in accordance with the "strict isolation technique". The quality of the dental treatment given him was no different from that given other patients. The only difference was that, in accordance with the clinic's strict isolation techniques, certain added precautions were taken in the rendering of treatment. These precautions included marking the "isolation room" with an orange "x", draping the contents of the room with orange plastic, and similar measures.

In the determination now under review, the respondent concluded that the complainant had been subjected to illegal discrimination and that the complainant had suffered mental anguish as a result. We find that this determination is not supported by substantial evidence, and we therefore grant the petition and annul that determination.

The petitioner's staff did not "withhold from or deny to [the complainant] any * * * accommodations, advantages, facilities or privileges" (Executive Law § 296 [2] [a]; *Elaine W. v Joint Diseases N. Gen. Hosp.,* 81 NY2d 211). This is proved conclusively by the fact that the petitioner, through its dental clinic staff, in fact provided the complainant with the dental treatment he required. The only "privilege" denied to the complainant was the privilege of being treated without the precautions dictated by the clinic's 1985 infectious disease protocol. We hold that where such a protocol is based on sound medical judgments which were reasonable when made, as part of a bona fide effort to protect both patients and staff, the complainant is entitled to no such "privilege".

We agree with the petitioner that "courts must show deference to the judgment exercised by a qualified professional"

*(Youngberg v Romeo,* 457 US 307, 322-323). There is no substantial evidence on the record upon which to base the conclusion that the infectious disease protocol was anything but a reflection of the medical consensus which prevailed at that time.

The complainant denies that he is, or was, infected with the HIV virus. He may nevertheless seek redress pursuant to Executive Law § 296 (2) (a), on the theory that, having been mistakenly evaluated as being at a higher than normal risk of HIV infection, he was incorrectly thought to be affected by a disability *(e.g., Petri v Bank of N. Y.,* 153 Misc 2d 426, 429; *Matter of Barton v New York City Commn. on Human Rights,* 140 Misc 2d 554, 560, *mod on other grounds* 151 AD2d 258; *see also, Doe v Roe, Inc.,* 160 AD2d 255, 256). However, his status as a person erroneously thought to be HIV-positive should not afford him any rights or privileges superior to those which the law affords to a person who actually is HIV-positive. Such persons may have the right to be free of irrational discrimination in connection with treatment modalities, but they have no legal right to be exempt from the application of those precautionary measures which are based on sound medical judgments.

Because the petitioner's infectious disease protocol was based on a reasonable medical judgment, the complainant had no right to be exempted from its application. The determination of the Commissioner erroneously recognizes such a right and should, therefore, be annulled. Bracken, J. P., Rosenblatt, Miller and Pizzuto, JJ., concur.