■ In the Matter of LLOYD M. LASSER et al., Petitioners, v MARGARITA ROSA, Respondent. [654 NYS2d 822] —Proceeding pursuant to Executive Law § 298 to review a determination of the New York State Division of Human Rights dated March 31, 1994, which, after a hearing, found that the petitioners, a dentist and a dental partnership, had discriminated against the complainant because she was perceived to be at risk for HIV infection, and awarded the complainant $25,000 in compensatory damages. By decision and judgment of this Court dated November 27, 1995, the petition was granted, on the law, with costs, and the determination was annulled (*Matter of Lasser v Rosa*, 221 AD2d 634). By order dated October 15, 1996, the Court of Appeals reversed and remitted the matter to this Court for consideration of issues raised but not considered on the appeal to this Court (*Matter of Lasser v Rosa,* 89 NY2d 14).

Adjudged that the petition is granted, on the law, with costs, and the determination is annulled.

The complainant filed a complaint against the petitioners, Dr. Lloyd Lasser, a dentist, and the Newburgh Dental Group, with the New York State Division of Human Rights (hereinafter SDHR), claiming that the petitioner Dr. Lasser refused to treat her because she had tested positive for the HIV virus. A hearing was held to determine whether Dr. Lasser did in fact discriminate against the complainant in violation of Executive Law § 296 (2) (a). The Administrative Law Judge (hereinafter ALJ) who heard the case and whose findings were adopted by the Commissioner of the New York State Division of Human Rights, determined that certain acts of Dr. Lasser constituted a refusal to treat the complainant based on her status as a person who was perceived to be at risk for HIV infection.

It is well-settled that "[t]he standard for review of administrative action is whether there was substantial evidence to support the finding" (*Matter of North Shore Univ. Hosp. v Rosa,* 86 NY2d 413, 419, *affg* 194 AD2d 727; *see also, Matter of Lahey v Kelly,* 71 NY2d 135, 140; *Matter of Pell v Board of Educ.,* 34 NY2d 222, 231; *Matter of Fitzpatrick v Board of Educ.,* 96 AD2d 557). Such substantial evidence "consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably, probatively and logically" (*300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 181). We find that there is absent from the record substantial evidence supporting the determination of the SDHR that Dr. Lasser discriminated against the complainant based on her HIV positive status.

The record demonstrates that after the complainant revealed that she had tested positive for the HIV virus, Dr. Lasser nevertheless conducted a complete oral examination and ascertained that the complainant required dental work consisting principally of a molar extraction. The evidence is uncontradicted that Dr. Lasser himself did not perform molar extractions and that in such a case, a referral to an oral surgeon would be made. Although there was a dental surgeon in Dr. Lasser's medical group that individual was "not there frequently".

Inasmuch as the complainant required a referral for the molar extraction, Dr. Lasser offered the complainant referrals to certain clinics which specialized in the treatment of HIV positive patients. At the hearing Dr. Lasser explained that in his professional judgment, these clinics offered precautions and accommodations beyond the minimum standards prescribed by the Center for Disease Control.

Specifically, Dr. Lasser explained that the "state of the art" methodologies utilized at these clinics, including special sterilization techniques and specially adapted facilities, reduced the possibility of cross infection among patients and staff. The SDHR did not produce a medical expert, or anyone for that matter, who offered an opposing expert opinion that Dr. Lasser's exercise of professional judgment in making the referral was inappropriate or medically unsound (*Matter of North Shore Univ. Hosp. v Rosa,* 86 NY2d 413, *supra*). Nor did the SDHR offer any expert evidence in connection with the techniques Dr. Lasser utilized in making his initial examination of the complainant. Significantly, it has been held that while HIV positive patients have the right to be free from irrational discrimination, "they have no legal right to be exempt from the application of those precautionary measures which are based on sound medical judgments" (*Matter of North Shore Univ. Hosp. v Rosa,* 194 AD2d 727, 729, *affd* 86 NY2d 413, *supra*).

The ALJ found that Dr. Lasser's office possessed the ability to treat the complainant for the molar extraction since an oral surgeon "frequent[ed] the clinic". However, this finding is factually misleading, inasmuch as Dr. Lasser's actual testimony was that the oral surgeon was "*not* there frequently" (emphasis added). There was no contradictory evidence adduced at the hearing. Moreover, at the hearing, counsel for the SDHR never inquired of Dr. Lasser whether his patients are ever referred to the oral surgeon in question. Nor did counsel elicit any evidence concerning the precise nature of the surgeon's relation-

ship to the medical group, the extent of his practice there, and the manner in which, if at all, he would treat patients initially seen by Dr. Lasser. Accordingly, there is no evidence in the record supporting the ALJ's conclusion that the complainant could have been treated by the oral surgeon. Further, while the ALJ also found that Dr. Lasser could have treated the complainant for gingivitis, Dr. Lasser stated that the complainant never mentioned gingivitis, and the record reveals that the complainant never testified that she mentioned to Dr. Lasser that she was suffering from this affliction.

Moreover, the evidence adduced at the hearing does not contain substantial evidence demonstrating that Dr. Lasser declined to treat the complainant. Rather the record indicates that Dr. Lasser informed the complainant of the special clinics as an alternative treatment option, but then informed her that if there was a lengthy wait to get an appointment, or if the clinic could not accommodate her, that she was to "get back to [him]". The complainant herself conceded that Dr. Lasser had made statements to this effect. Further, there was no testimony adduced that Dr. Lasser or his staff customarily performed any of the services the petitioner required on an initial office visit, a factor which further undermines the assertion that treatment was denied on the day in question. Additionally, the complainant testified that Dr. Lasser never told her that he would not treat her (*see, Matter of Sattler v City of N. Y. Commn. on Human Rights,* 180 AD2d 644, 646).

The contemporaneously made entries on the complainant's dental charts also support the assertion that the complainant herself was given the option of selecting where to receive treatment. The entry in question stated, "suggested alternative specialty clinics, [patient] to decide". Under the circumstances, the determination of the SDHR that Dr. Lasser's referrals were merely a pretext to mask a refusal to treat the complainant is a conclusion which is unsupported by substantial evidence in the record (*Matter of North Shore Univ. Hosp. v Rosa, supra,* 86 NY2d, at 419-420; *Matter of Sattler v City of N. Y. Commn. on Human Rights, supra*). Thompson, J. P., Altman, Krausman and Goldstein, JJ., concur.